DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: DANA WALSH KUMAR
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741
Email: dana.walsh.kumar@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RAHUL DEV MANCHANDA,<br><br>               Debtor. | Chapter 7<br><br>Case No. 23-22095 (SHL) |
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>  -  against  -<br><br>RAHUL DEV MANCHANDA,<br><br>               Defendant. | Adv. Proc. No. 24-_____ (SHL) |

<u>**COMPLAINT TO OBJECT TO DISCHARGE**</u>
<u>**OR, ALTERNATIVELY, DETERMINE NONDISCHARGEABILITY**</u>

Plaintiff the United States of America (the "United States"), on behalf of the Internal
Revenue Service ("IRS") and the Small Business Administration ("SBA"), by and through its
attorney, Damian Williams, United States Attorney for the Southern District of New York, seek to
obtain a judgment against Defendant Rahul Dev Manchanda ("Defendant" or "Manchanda")
determining: (a) that he is not entitled to discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3),
(a)(4), and (a)(5); or (b) if a discharge is granted, (1) that his federal income tax liability for tax

year 2022 is nondischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i); (2) that his federal income tax liability for tax years 2009-2015 is nondischargeable under 11 U.S.C. § 523(a)(1)(C); and (3) that a $500,000 COVID-19 Economic Injury Disaster Loan ("EIDL") from the SBA to Manchanda's law firm and guaranteed by Defendant is nondischargeable under 11 U.S.C. § 523(a)(2). The United States alleges upon information and belief as follows:

## **INTRODUCTION**

1.      On February 4, 2023, Manchanda filed for bankruptcy under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in an effort to discharge various debts, including hundreds of thousands of dollars of federal tax liabilities that he owes the IRS and hundreds of thousands of dollars he owes the SBA as a guarantor, while seeking to retain a $900,000 home and luxury watches for himself and his wife, and continuing to lease two luxury automobiles.

2.      Manchanda is a lawyer and solely owns a law firm—Manchanda Law Office PLLC ("Manchanda Law Office"). The law firm's website touts Manchanda as an "award-winning attorney" with "expertise as a New York immigration lawyer, a criminal defense counselor and in multiple other areas."

3.      Manchanda has accumulated hundreds of thousands of dollars in tax liabilities going back to 2009, despite having earned substantial revenue from his law firm and living lavishly. Indeed, in 2022, just months before filing for bankruptcy, Manchanda described his business as doing great and purchased a Rolex watch for his wife, leased a BMW sport utility vehicle, and purchased a new home for almost $900,000. Manchanda knew of his tax liabilities when he made these purchases; he simply ignored the liabilities and then filed for bankruptcy seeking to discharge them.

4.      In addition to failing to pay his tax liabilities, upon information and belief, Manchanda also concealed the true extent of his income by claiming as deductible business expenses on his federal tax returns nonqualifying items such as designer clothing, the Rolex watch he purchased for his wife, and the full amount of the rent or mortgage payments for his primary residence.  Manchanda has been claiming personal expenses as deductible business expenses for years, thus artificially decreasing his taxable income.

5.      Moreover, Manchanda improperly used the proceeds of a $500,000 SBA COVID-19 EIDL loan to his law firm to pay for personal expenses.  Although the terms of the loan required the loan proceeds to be used for working capital to alleviate business hardships associated with the COVID-19 pandemic, Manchanda instead wrongly transferred the proceeds to different bank accounts and used them for the downpayment on his home, to make mortgage payments, and to pay for thousands of dollars' worth of home improvements.

6.      Manchanda then filed for bankruptcy seeking to discharge his debts to the IRS and SBA debts, among others, despite his failure to pay his taxes for many years and violation of the EIDL loan agreement.  His bankruptcy petition and the accompanying schedules are full of what he has acknowledged are false statements regarding his financial affairs, but he has not corrected them.

7.      The United States thus objects to Manchanda's discharge under 11 U.S.C. § 727 (Counts 1 through IV), and alternatively seeks judgment that his debts to the IRS and SBA should be excepted from discharge under 11 U.S.C. § 523(a) (Counts V through VII).

## **JURISDICTION AND VENUE**

8.      This is an adversary proceeding brought pursuant to 11 U.S.C. § 727(a) to object to the discharge sought by Manchanda through this bankruptcy, and otherwise to determine that his debts to the IRS and the SBA are excepted from discharge under 11 U.S.C. § 523(a).

9. The district court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this case is referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and the Southern District of New York's Amended Standing Order of Reference Re: Title 11, M10-468, 12 Misc. 00032, dated January 31, 2012 (Preska, C.J.).

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (J).

11. Venue in this district is proper pursuant to 28 U.S.C. § 1409.

12. This Complaint is timely filed as the deadline for the United States to file a complaint objecting to discharge was extended through and including March 25, 2024, by an order dated January 17, 2024. *See* Bankruptcy Case No. 23-22095 (SHL), ECF No. 110.

## THE PARTIES

13. The Plaintiff is the United States of America, on behalf of the IRS and the SBA.

14. The Defendant, Rahul Dev Manchanda, is the debtor in the associated bankruptcy proceeding, No. 23-22095, brough under Chapter 7 of the Bankruptcy Code. He resides at 270 Victory Boulevard, New Rochelle, New York 10801 ("270 Victory Boulevard").

## FACTUAL ALLEGATIONS

A. Manchanda's Prior Bankruptcy Proceedings

15. On October 4, 2011, Manchanda filed a voluntary petition in this Court pursuant to Chapter 7 of the Bankruptcy Code, which was assigned case number 11-14666. This case was dismissed on January 8, 2012.

16. On September 3, 2013, Manchanda filed a voluntary petition for bankruptcy in this Court pursuant to Chapter 7 of the Bankruptcy Code, which was assigned case number 13-12880.

17. In that petition, Manchanda listed federal tax liabilities he owed the IRS of more than $500,000 for tax years 2007-2012.

18.     On January 13, 2014, Manchanda received a discharge of all debts dischargeable under 11 U.S.C. § 523(a).  On May 12, 2014, consistent with the discharge order, the IRS wrote off Manchanda's unpaid federal income tax liabilities for 2007 and 2008.

19.     On April 30, 2014, Manchanda filed a separate voluntary petition for bankruptcy in this Court pursuant to Chapter 13 of the Bankruptcy Code, which was assigned case number 14-11259.  On May 14, 2024, Manchanda filed a proposed Chapter 13 plan in that case.

20.     On May 23, 2014, the IRS filed a proof of claim in the Chapter 13 bankruptcy listing secured claims for tax years 2009-2011 totaling $228,376.75, unsecured priority claims for tax years 2012-2013 totaling $21,046.64, and unsecured general claims totaling $1,538.48.  On August 29, 2014, the United States, on behalf of the IRS, objected to confirmation of Manchanda's Chapter 13 plan because it failed to provide for full payment of the IRS's secured and unsecured priority claims as required by 11 U.S.C. §§ 1322(a)(2), 1325(a)(5).

21.     On January 7, 2015, the Court granted Manchanda's motion to voluntarily dismiss his Chapter 13 case.

22.     On January 29, 2016, Manchanda filed another voluntary petition for bankruptcy in this Court pursuant to Chapter 13 of the Bankruptcy Code, which was assigned case number 16-10222.  On February 16, 2016, Manchanda filed a proposed Chapter 13 plan in that case.

23.     The IRS filed a proof of claim listing secured claims totaling $268,229.25 for tax years 2009-2013 and unsecured priority claims totaling $8,000 for 2015.  On May 5, 2016, the United States, on behalf of the IRS, objected to Manchanda's Chapter 13 plan because it did not provide for full payment of the IRS's secured and unsecured priority claims as required by 11 U.S.C. §§1322(a)(2), 1325(a)(5).

24.     On January 27, 2017, the Court granted Manchanda's motion to voluntarily dismiss this Chapter 13 case.

25.     To date, Manchanda has not paid the tax liabilities he previously sought to discharge through his Chapter 13 petitions.

B.  The Current Bankruptcy Proceeding

26.     On February 4, 2023, Manchanda filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, along with his schedules of assets and liabilities and a Statement of Financial Affairs.

27.     On February 25, 2023, Manchanda filed an amended Statement of Financial Affairs.

28.     On March 8, 2023, Manchanda filed amended schedules of his assets and liabilities.

29.     Manchanda was represented by counsel when he filed the instant Chapter 7 petition. The petition and schedules bear Manchanda's electronic digital signature.

30.     Manchanda's counsel withdrew from his representation in or around April 20, 2023.

31.     Manchanda, who is also a lawyer, has not amended his petition since his counsel withdrew.

32.     In or around May 2023, before the initial deadlines expired in accordance with Federal Rule of Bankruptcy Procedure 4004, the United States moved to extend its time to object to Manchanda's discharge in this case pursuant to 11 U.S.C. § 727 and to file an adversary proceeding contesting the dischargeability of Manchanda's debts to the IRS and SBA pursuant to 11 U.S.C. §§ 523(a)(2), (4) or (6).  The Court granted the motion and extended the United States' deadline to object to September 8, 2023.  The Court subsequently extended these deadlines twice more, ultimately extending them until March 25, 2024.

33. On June 1, 2023, the Court ordered Manchanda to produce certain documents relating to his finances and appear for an examination pursuant to Federal Rule of Bankruptcy 2004.

34. Manchanda produced some responsive records, but failed, among other things, to provide "documents showing how [he] calculated income on Schedule I" to his bankruptcy petition, "documents related to the valuation of . . . Manchanda Law Office," "[m]onthly statements for all debts listed in the Schedules . . . for the two (2) years prior to the date of filing of the Petition," and "documents relating to gifts or transfers made to or from [Manchanda] having a value in excess of $100.00 for the past two years."

35. The documents that Manchanda did produce, which included tax returns and certain bank statements, do not paint a clear picture of Manchanda's finances. Manchand does not have any personal checking or savings accounts, and uses his business accounts for both personal and business expenses. Apart from some handwritten notations indicating whether expenses were business or personal, Manchanda did not produce records in a form that a third party could review with clarity.

36. In addition, Manchanda labeled many seemingly personal expenses, such as purchases at clothing companies, a landscaping business, and airline tickets for Manchanda's mother-in-law, as business expenses on the bank records produced.

37. Manchanda appeared for two examinations pursuant to Rule 2004. The first examination of Manchanda took place via Zoom on September 20, 2023. The examination was continued, and the continued examination took place on January 26, 2024.

C. Manchanda's Petition and Schedules Contain False Statements

38. Manchanda's bankruptcy petition and its related filings contain numerous false statements.

39.     In his amended Schedule A/B to the petition, Manchanda disclosed that he owned property with a total value of $871,601, consisting of $845,265 in real estate, $11,336 in vehicles, and $14,800 in personal and household items, including a Rolex watch valued at $5,500. Manchanda also indicated that he owned Manchanda Law Office outright, and valued his interest in the law firm at $100.

40.     However, Manchanda provided no documentation supporting the valuation of his law firm at $100. Manchanda testified that he did not know why the Manchanda Law Firm was valued at $100 in his Schedule A/B nor has he explained how that value was assigned.

41.     In Schedule C to the petition, Manchanda claimed that $12,200 of his personal and household items, and $179,975 of real property, were exempt pursuant to 11 U.S.C. § 522(b)(3). Manchanda checked the box stating that he was claiming a homestead exemption of more than $189,050, and stated that he did not acquire the property at issue within 1,215 days before filing the Chapter 7 Petition. Manchanda, however, purchased his current residence at 270 Victory Boulevard in July 2022, approximately 213 days before filing his petition, and upon information and belief, moved there shortly thereafter.

42.     In his Schedule D, Manchanda listed only $122,957 in secured liabilities to the IRS. However, as of the petition date, Manchanda owed a total of $373,759.84 in secured liabilities to the IRS.

43.     On Schedule I, Manchanda indicated that he is an attorney employed by Manchanda Law Office, located at 30 Wall Street, Suite 8207, New York, New York, and that he earned $0 per month in wages, but received $4,250 per month in interest and dividends from the firm. He listed total monthly income as $7,527.53, which included his wife's monthly income that she received as an employee of Manchanda Law Office.

44.     Manchanda did not, however, provide the required statement showing gross recipes, ordinary and necessary business expenses, and the total monthly net income for the business.  Nor has he explained how this monthly income, which is supposedly derived from his law firm, could be reconciled with the valuation of the firm at $100.

45.     In his Schedule J, Manchanda listed his total monthly expenses as $7,535.  This amount does not include the monthly mortgage payment of $6,517.39 for his personal residence where he resides with his wife and son, which he notes that he pays "from his business since he uses it for business purposes."

46.     In Part 1 of his Statement of Financial Affairs, Manchanda indicated that he had not lived anywhere other than where he lived as of February 2023 during the prior three years. Manchanda, however, purchased his current residence at 270 Victory Boulevard in July 2022, and upon information and belief, had moved there shortly after purchasing the home.

47.     In Part 2 of his Statement of Financial Affairs, Manchanda listed his gross income from January 1 to December 31, 2022, as $52,000 and his gross income from January 1 to December 31, 2021, as $51,999.  Manchanda attributed this income to operating a business, which, upon information and belief, was derived from Manchanda's tax returns that included improper business deductions.

48.     In Part 5 of his Statement of Financial Affairs, Manchanda averred that he did not give any gifts with a total value of more than $600 per person.  In or around June 2022, however, he purchased a Rolex watch for his wife, which cost approximately $10,000.

49.     In Part 11 of Manchanda's Statement of Financial Affairs, he failed to provide certain required information regarding his business, including the name of its accountant or

bookkeeper, the business's employer identification number, and the dates the business has been in existence.

50. Manchanda filed the petition, its accompanying schedules, and his Statement of Financial Affairs, certifying, under penalty of perjury, that each was true and correct to the best of his knowledge, information, and belief. He has not amended or sought to amend any of these filings since filing for bankruptcy.

D. Manchanda's Federal Tax Debts

51. On May 5, 2023, the IRS filed a proof of claim in Manchanda's current bankruptcy proceeding, which it amended on May 8, 2023, and again on November 21, 2023. The IRS's latest amended proof of claim lists the following income tax liabilities owed by Manchanda:

| Tax Period | Date Tax Assessed | Tax Due ($) | Penalties Due as of Petition Date ($) | Interest Due as of Petition Date ($) | Total Due as of Petition Date ($) | Date Notice of Tax Lien Recorded |
|---|---|---|---|---|---|---|
| 2009 | 11/22/2010 | 75,129.34 | 20,756.24 | 50,515.43 | 146,401.01 | 05/06/2011; 12/03/2020 |
| 2010 | 11/21/2011 | 56,280.00 | 15,517.00 | 33,811.86 | 105,608.86 | 11/01/2022; 09/23/2013 |
| 2011 | 11/19/2012 | 35,096.00 | 9,449.76 | 19,229.07 | 63,774.83 | 09/23/2013; 11/01/2022 |
| 2012 | 09/23/2012 | 15,260.00 | 4,071.00 | 7,531.37 | 26,862.37 | 11/01/2022 |
| 2013 | 06/02/2014 | 5,296.00 | 1,419.00 | 2,341.50 | 9,056.50 | 02/06/2015 |
| 2015 | 11/28/2016 | 13,792.00 | 3,448.00 | 4,816.27 | 22,056.27 | 11/01/2022 |
| 2022 | 11/13/2023 | 3,236.00 | | 138.33 | 3,374.33 | |
| **Total** | | **204,089.34** | **54,661.00** | **118,383.83** | **377,134.17** | |

52. Upon information and belief, for all of the tax years in question, Manchanda filed Schedules C (Form 1040) to report income from his law firm, which he operated as a sole proprietorship.

53.     Manchanda has failed to pay the income taxes he owed for tax years 2009-2013 and 2015, and the IRS has recorded notices of federal tax lien for these liabilities.  Manchanda thus has secured tax liabilities totaling $373,759.84.

54.     Manchanda filed an amended 2022 tax return in or around October 2023 after he filed the Chapter 7 petition in this case.

55.     As of the date of its latest amended proof of claim, the IRS had calculated Manchanda 2022 tax liability as $3,374.33.   However, in February 2024, the IRS began an examination of Manchanda's tax liability for 2022 based on potentially improper business deductions and that examination is underway.  The IRS sent an initial examination letter to Manchanda requesting that he provide documentation to verify business expenses claimed on his return.  Manchanda did not provide any documentation to the IRS and instead, on March 15, 2024, Manchanda sent the IRS a fax alleging that the IRS violated the automatic stay pursuant to 11 U.S.C. § 362.  If Manchanda fails to provide the IRS with documentation to verify business expenses claims on his return, then Manchanda may have additional tax liability for 2022.

56.     Despite owing taxes from as far back as 2009 and continuing to operate his law firm, which generated over $970,000 in revenue in 2022 and $660,000 in revenue in 2021, Manchanda has failed to pay his tax liabilities for tax years 2009-2013, 2015, and 2022.

E.   Manchanda's Lavish Lifestyle and Improper Tax Deductions

57.     In at least the last few years preceding his bankruptcy, Manchanda spent money freely and lived lavishly.

58.     In or around June 2022, about eight months before filing for bankruptcy, Manchanda purchased a Rolex watch, worth approximately $10,000, for his wife.

59.     In 2019, Manchanda purchased a Rolex watch for himself, which according to his petition, was worth $5,000.

60.     In July 2022, Manchanda purchased a house for his family in New Rochelle, New York for $885,000.  As discussed in more detail below, Manchanda used the proceeds from a loan his law firm received from the SBA to fund the downpayment for this home.

61.     Manchanda then spent tens of thousands of dollars on home improvements for the new home, including window treatments, landscaping, painting, and brickwork.

62.     Also in July 2022, Manchanda leased a new BMW, which required making an initial payment of approximately $4,000.

63.     Moreover, in 2022, Manchanda was a member of the Knollwood Country Club in Elmsford, New York.

64.     Indeed, during his examination, Manchanda testified that in or around September 2022, approximately five months prior to filing for bankruptcy, he was "not having any financial difficulty," he was "pulling 50 to 100 thousand," and "making lots of money."

65.     These expenses are offered as examples of the significant expenditures Manchanda made while he ignored his obligations to the IRS.  Upon information and belief, Manchanda incurred additional unnecessary expenditures in the past several years while not paying his tax obligations.

66.     In addition, Manchanda concealed many of these lavish expenses and made his business appear less profitable than it was to avoid paying taxes by improperly labeling personal expenses as business expenses and deducting them from his taxable income on his tax returns.

67.     For example, Manchanda deducted the rent on *both* his law firm's office space *and* for (before he moved to New Rochelle) his personal residence in Manhattan.  He has argued this practice was appropriate because he would "meet clients at [his] home," "had all [his] client files there," and was "doing [his] consultations there, and legal work there."

68.     Upon information and belief, Manchanda continued this practice when he moved to New Rochelle, when he improperly continued to deduct as business expenses the rent for his business address along with the mortgage payments for his newly purchased family home.

69.     Manchanda also deducted as business expenses any costs for which he could conceive of any relation to his business, including, for example, a Valentine's Day dinner with his wife, who he employed as his law office manager.  Manchanda purported to justify this practice by claiming that he is "all business, all the time," and was unable at his deposition to describe any personal expense that he would not consider to be a business expense.

70.     In his amended 2022 tax return, Manchanda reported $972,056 in gross receipts or sales and $919,573 in total expenses for his law firm, resulting in a $52,483 profit.  The expenses included $193,171 in "other business property," $76,508 in "office expenses," $63,924 in "Dues and Subscriptions," and approximately $10,000 for travel and meals.

71.     Upon information and belief, these supposed business expenses included costs relating to the purchase and mortgage payments for his family home.  Manchanda thus not only incurred lavish personal expenses in the months leading up to filing for bankruptcy, but also concealed those expenses by claiming them as business expenses and deducting them on his tax return.

72.     Manchanda thus filed for bankruptcy in February 2023 just months after his law firm earned nearly $1 million in 2022, while he belonged to a country club and had recently purchased a Rolex and a new home, and leased a BMW.

F.  Manchanda's SBA Loan

73.     On July 21, 2020, Manchanda, signed a loan authorization and agreement on behalf of his law firm, Manchanda Law Office, for a $150,000 COVID-19 EIDL loan disbursed by the SBA.  This loan was assigned SBA loan number XXXXXX8110.

74.     On November 17, 2021, Manchanda, executed an amended loan authorization and agreement form on behalf of his law firm, in which the SBA authorized an additional disbursement of $350,000 under the same loan number, for a total SBA COVID-19 EIDL loan of $500,000 (the "SBA Loan").

75.     The COVID-19 EIDL program provided funding to help small businesses recover from the economic impacts of the COVID-19 pandemic.

76.     Pursuant to the COVID-19 EIDL loan documents, the SBA Loan incurs interest at a rate of 3.75% per year.  Payments on the SBA Loan are due every month, beginning in January 2023—thirty months from the date of the original note, which was executed in July 2020.

77.     Pursuant to the loan authorization and agreement for the SBA Loan, the borrower (Manchanda Law Office) was required to "use all the proceeds of [the] Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter."  It also required the borrower to "obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement."

78.     The loan authorization and agreement for the SBA loan further states that the borrower "will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior permission of SBA."

79.     The first installment of the SBA Loan, in the amount of $149,900, was deposited into Manchanda Law Office's Citibank checking account on July 22, 2020.

80.     Upon information and belief, Manchanda used this Citibank checking account for his law firm's business operating expenses as well as for his personal expenses.

81.     Also on July 22, 2020, Manchanda withdrew $150,000 from the law firm's Citibank checking account.

82.     Manchanda also applied for and received a personal $19,000 Paycheck Protection Program ("PPP") loan from the SBA, which was deposited into his law firm's Citibank checking account on July 2, 2020.[1]

83.     On August 13, 2020, Manchanda deposited $168,302 into his law firm's Citibank savings account, which, upon information and belief, included the proceeds from the SBA Loan, which had been withdrawn less than a month earlier from the firm's checking account.

84.     On November 30, 2020, Manchanda withdrew $148,342 from the law firm's Citibank savings account, which, upon information and belief, included the proceeds from the SBA Loan, which had been deposited into that account in August 2020. On January 28, 2021, Manchanda deposited the same amount, $148,342, back into the law firm's Citibank savings account.

85.     On February 9, 2021, Manchanda withdrew $148,344 from the law firm's Citibank savings account by writing a check to himself. Manchanda deposited that check on April 4, 2022,[2] into his law firm's savings account at M&T Bank.

86.     On November 23, 2021, the second installment of the SBA Loan, totaling $350,000 was deposited into Manchanda's law firm's checking account at TD Bank.

87.     The next day, on November 24, 2021, Manchanda withdrew the entire $350,000 in a check made payable to Manchanda Law Office PLLC.

---

[1] The PPP loan was previously forgiven by the SBA and is accordingly not listed on the SBA's proof of claim filed in Manchanda's bankruptcy.

[2] Although the check is dated February 9, 2021, Manchanda apparently waited over a year to deposit it into the M&T savings account.

88.     Upon information and belief, Manchanda used this TD Bank account for his law firm's business operating expenses, as well as for his personal expenses.

89.     On April 4, 2022, the same day that he deposited the $148,344 check from the law firm's Citibank savings account into the M&T business savings account, Manchanda also deposited the $350,000 check from the firm's TD Bank checking account into the M&T business savings account.

90.     Thus, Manchanda deposited the entire amount of the SBA Loan, approximately $500,000, into his law firm's M&T savings account on or around April 4, 2022.

91.     On April 11, 2022, a week later, Manchanda withdrew $88,500 from the M&T account, and used these funds for part of the downpayment for his personal residence at 270 Victory Boulevard.

92.     On July 6, 2022, the day Manchanda closed the sale for 270 Victory Boulevard, Manchanda withdrew $180,157.27 from the M&T savings account, using these funds to pay the balance he owed for the home purchase and for closing costs.

93.     Also in July 2022, Manchanda wired $10,000 from the law firm's M&T savings account to Tri State Brickface Stucco, a contractor that did work on the outside of his home at 270 Victory Boulevard.

94.     Manchanda also transferred approximately $70,000 from the firm's M&T savings account to his M&T business checking account in July and August 2022.

95.      In August 2022, Manchanda withdrew $149,938.85 from the firm's M&T savings account, leaving a balance of only $10 in that account.  It is unclear what Manchanda used these funds for or into which account they were deposited.

96.     Manchanda's use of the proceeds of the loan taken out by his law firm to purchase his home and pay home-related expenses violates the terms of the loan agreement, which require EIDL loan proceeds to be used for "working capital necessary to carry the business concern until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury" caused by COVID-19.  13 C.F.R. § 123.303.

97.     In addition, even though Manchanda claims that he uses his home for almost all of his legal work, he did not receive the required permission from the SBA to relocate his business. His use of his home as his office therefore further violates the SBA loan agreement.

98.     Manchanda thus improperly used the SBA Loan proceeds to pay for his personal residence and home improvement expenses just months before filing for bankruptcy in which he sought a discharge of that loan.

99.     Manchanda also failed to keep books and records documenting how he used the loan proceeds, as was required by the SBA loan agreement.  Manchanda testified at his deposition that he intermingled the SBA funds into accounts that he also used for personal expenses.

### COUNT I
### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)

100.     The allegations contained in paragraphs 1 through 99 are incorporated by reference as if fully set forth herein.

101.     This Court may deny discharge if "the debtor, within intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2)(A).

102.     "Intent to hinder is shown where a debtor acts with an intent to impede or obstruct creditors, while the intent to delay is shown when the debtor acts with an intent to slow or postpone

creditors." *In re Gasson*, 629 B.R. 539, 550 (S.D.N.Y. 2021), *aff'd sub nom. Gasson v. Premier Cap., LLC*, 43 F.4th 37 (2d Cir. 2022).

103.    Manchanda purchased expensive and unnecessary items in the year before filing for bankruptcy, including expensive gifts for his wife, an expensive home, and a luxury car, and used the proceeds from an SBA loan to his law firm to purchase his personal residence and to make improvements on it, in order to hinder, delay or defraud the IRS's and the SBA's ability to collect from him.

104.    By immediately withdrawing the SBA funds from the accounts to which they were deposited, Manchanda never intended to use those funds for their required purpose. Instead, Manchanda used the SBA funds for the downpayment on his house and thousands of dollars worth of home improvements. He thus never intended on repaying the SBA loan and instead sought to discharge it in bankruptcy.

105.    Moreover, Manchanda attempted to conceal the purchase of his home by failing to disclose on his petition that he had moved within the past three years. In multiple places on his petition and schedules, Manchanda stated that he had not moved in the year preceding the bankruptcy.

106.    All of this was done with an intent to hinder and defraud creditors, and denial of discharge under 11 U.S.C. § 727(a)(2) is warranted.

**COUNT II**
**Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)**

107.    The allegations contained in paragraphs 1 through 106 are incorporated by reference as if fully set forth herein.

108.    This Court may deny discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents,

records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3).

109.    Manchanda failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

110.    To satisfy his recordkeeping obligations, a debtor's records "must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *In re Shove*, 83 F.4th 102, 111 (1st Cir. 2023).

111.    Manchanda's records do not identify transactions such that an intelligent inquiry can be made of them and he failed to produce records providing a complete and accurate portrayal of his financial condition or that would allow a creditor to track his financial dealings. Instead, the records Manchand provided to the IRS and SBA show business accounts that include expenses for both personal and business that do not provide an accurate picture of Manchanda's financial condition since there is no way to discern exactly which expenses were business-related or how Manchanda treated those expenses.

112.    For example, Manchanda pays for clothing, medical expenses, jewelry, take-out meals and other seemingly personal items through his business accounts and, upon information and belief, he does not have any personal checking or savings accounts.

113.    In addition, Manchanda failed to maintain books and records showing his use of the SBA loan proceeds. In fact, Manchanda admits to having "intermingled" the SBA loan proceeds with other money "on a regular basis." It is therefore impossible to ascertain definitively how this money was used and for which purposes.

114. Nor is Manchanda's failure to maintain records justified. As a lawyer and business owner for over twenty years, it was not reasonable for Manchanda to fail to keep records recording business expenses or recording how the SBA loan proceeds were utilized.

115. Denial of discharge pursuant to 11 U.S.C. § 727(a)(3) is therefore warranted.

## COUNT III
### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

116. The allegations contained in paragraphs 1 through 115 are incorporated by reference as if fully set forth herein.

117. This Court may deny a debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4).

118. In this bankruptcy, Manchanda certified, under penalty of perjury, that his petition, the accompanying schedules, and the Statement of Financial Affairs were each true and correct to the best of his knowledge, information, and belief.

119. Nevertheless, Manchanda made numerous false statements in these documents, including misstatements about the valuation of his law firm and the timing of his home purchase, and omitted relevant information about his business.

120. Manchanda made these statements knowingly and has failed to correct any false statements since filing his petition.

121. These statements relate directly to Manchanda's business dealings and the disposition of his property with respect to the purchase of his home, and are therefore material.

122. Denial of discharge pursuant to 11 U.S.C. § 727(a)(4) is therefore warranted.

## COUNT IV
## Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5)

123. The allegations contained in paragraphs 1 through 122 are incorporated by reference as if fully set forth herein.

124. This Court may deny a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

125. "This section is intended to deter those who attempt to abuse the bankruptcy process by obfuscating the true nature of [their] affairs, and then refusing to provide a credible explanation." *In re Gannon*, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) (internal quotation marks omitted) (alteration in original).

126. Manchanda has claimed that he has insufficient assets to meet his liabilities, but has failed to explain how he managed to live a lavish lifestyle, including luxury watches, cars and a new home, in the year preceding his bankruptcy.

127. Manchanda claims to have earned "lots of money" just several months before filing for bankruptcy but has not explained satisfactorily a loss of assets or deficiency of assets to meet his liabilities considering his lifestyle and purchases.

128. In addition, as explained above, Manchanda withdrew $149,938.85 from the firm's M&T savings account in August 2022 and Manchanda has not provided documentation reflecting how those funds were used.

129. Accordingly, denial of discharge pursuant to 11 U.S.C. § 727(a)(6) is warranted.

## COUNT V
## Nondischargeability of Tax Debt for Tax Year 2022
## Pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i)

130. The allegations contained in paragraphs 1 through 129 are incorporated by reference as if fully set forth herein.

21

131. Pursuant to 11 U.S.C. § 523(a)(1)(A), a tax debt is not dischargeable if it is "of the kind and for periods specified in section . . . 507(a)(8) of this title." Section 507(a)(8)(A)(i), in turn, applies to "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition."

132. Manchanda filed his bankruptcy petition on February 4, 2023. Because his income tax return for tax year 2022 was not due until April 15, 2023—within three years of the date of his petition—his tax, interest, and penalty liabilities are exempted from discharge pursuant to section 523(a)(1)(A).

133. Any corresponding penalties are further exempted from discharge pursuant to 11 U.S.C. § 523(a)(7), which provides that a debtor is not discharged from a debt "relating to a tax of a kind not specified in" 11 U.S.C. § 523(a)(1).

### COUNT VI
### Nondischargeability of Tax Debt for Tax Years 2009-2013 and 2015
### Pursuant to 11 U.S.C. § 523(a)(1)(C)

134. The allegations contained in paragraphs 1 through 133 are incorporated by reference as if fully set forth herein.

135. Pursuant to 11 U.S.C. § 523(a)(1)(C), a tax debt is not dischargeable when the debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

136. The tax, interest, and penalty liabilities Manchanda incurred for tax years 2009-2013 and 2015 are excepted from discharge under section 523(a)(1)(C) because Manchanda willfully attempted to evade or defeat these taxes in one or more of several ways, including:

(a) Failing to make voluntary payments towards his outstanding tax obligations;

(b) Claiming improper deductions on his tax returns by labeling personal expenses as business expenses;

(c) Spending significant sums of money on non-essential items such as luxury cars and watches;

(d) Using business accounts to pay for personal expenses like luxury cars and watches for himself and his wife;

(e) Concealing the value of his personal property and business interests in his bankruptcy schedules by underestimating or failing to estimate their value.

## COUNT VII
### Nondischargeability of the SBA Loan Pursuant to 11 U.S.C. §§ 523(a)(2)

137.    The allegations contained in paragraphs 1 through 136 are incorporated by reference as if fully set forth herein.

138.    Pursuant to 11 U.S.C. § 523(a)(2), a debt for money is not dischargeable to the extent it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

139.    When a creditor "entrusts the debtor with money to use for a specific purpose and the debtor has no intention of using it in that manner, a misrepresentation exists upon which a debt can be held non-dischargeable." *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995).

140.    The SBA Loan funds were required to be used as working capital to alleviate economic injury relating to his business, Manchanda Law Office.  Manchanda received the loan knowing those terms.

141.    Immediately after the loan proceeds were deposited into the law firm's business checking accounts, Manchanda withdrew them, indicating that he never intended to use them for the intended purpose.  Instead, he transferred the funds to other accounts and ultimately spent most

of them on the downpayment for his personal residence and other home expenses, in violation of the terms of the loan documents.

142. In addition, Manchanda failed to maintain proper books and records showing how the proceeds were spent, and instead deliberately intermingled those funds within his accounts, in further violation of the loan agreement.

WHEREFORE, the United States respectfully requests that this Court enter the following relief:

A. Deny Defendant a discharge; or

B. Determine that Defendant's federal income tax liabilities for tax years 2009-2013, 2015, and 2022, including interest and penalties, are nondischargeable;

C. Determine that the SBA Loan is nondischargeable; and

D. Award the United States its costs in this action, and such other and further relief as the Court determines is just and proper.

Dated: March 25, 2024
New York, New York

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:  /s/ *Dana Walsh Kumar*
DANA WALSH KUMAR
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741
E-mail: dana.walsh.kumar@usdoj.gov