**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| RAHUL DEV MANCHANDA, | Case No. 23-22095 (SHL) |
| Debtor | |

## DEBTOR REPLY AFFIRMATION TO AUSA DANA WALSH KUMAR

TO:   THE HONORABLE SEAN H. LANE
      UNITED STATES BANKRUPTCY JUDGE

The Debtor, Rahul Dev Manchanda, submits this Reply Affirmation to AUSA Dana Walsh Kumar as

follows:

## PRELIMINARY STATEMENT

1.      In all of my 22 years of law practice, I have never seen such an abusive, wanton display of

disregard for facts, law, and common decency as I have read in AUSA Dana Walsh Kumar's

COMPLAINT TO OBJECT TO DISCHARGE OR, ALTERNATIVELY, DETERMINE

NONDISCHARGEABILITY.

2.      Time and time again, AUSA Dana Walsh Kumar resorts to outright lies, falsities, half-truths,

defamation, slander, libel, even outright racism, sexism, and discrimination stemming from

what can only be her own personal insecurities as she is married to an Indian man named

Debashish Kumar and she, being a white American woman working for the U.S. government,

and my wife Sylwia being from Poland and working in the private sector, as the Law Office

Manager of my 22 year old law practice.

1

2a.   AUSA Dana Walsh Kumar has continuously referred to Debtor's Polish wife in a derogatory manner, presumably because she is also married to an Indian man and can not accept the fact that Debtor's wife serves as his law firm manager, supervising past staff, managing all billing and accounts, insurance policies, and hundreds of other tasks for which she was paid an annual salary which was actually below market rates, but any and all legal, ethical and moral deductions and exemptions Dana Walsh Kumar objected to, both in writing and verbally during hearings and depositions - this kind of blatant racism, sexism, and discrimination is unacceptable, and colors everything that she writes and states in her objections.

3.    We will attempt to point out each and every bit of attorney and government misconduct by AUSA Dana Walsh Kumar in this Reply Affirmation, but they are so numerous and so rapid-fire, that we may have to resort to cut and paste responses as she tends to repeat her lies and deception throughout her pleading, often using the well known lawyer weasel phrase "upon information and belief," when she knows very well, that the statement accompanying that phrase is outright false, slanderous, defamatory, libelous, and tortious.

## SPECIFIC RESPONSES TO AUSA DANA WALSH KUMAR'S SPURIOUS ALLEGATIONS

4.    First, the wholesale abuse of authority in trying to enforce tax debts that date from 15 years ago, after Debtor's multiple OIC requests since 2008, is illegal, unethical, and immoral as per the 10 year Collection Statute Expiration Date (CSED).

5.    This law firm has now also declared bankruptcy in case index 23-11805 as per the profit and loss showing zero income for 6 months plus, before filing, no doubt also made worse and

exacerbated by AUSA Dana Walsh Kumar's 2 year long torture session in this bankruptcy proceeding.

6. Yes our law firm did exceedingly well when Republicans and conservatives have been in office, but seem to take a financial nose-dive when leftist, socialist, communist Democrats assumed the Presidency - but this was certainly good for career government workers such as AUSA Dana Walsh Kumar - Debtor, like all small business owners, has paid tens of millions of dollars to the federal U.S. Government, New York State, and New York City Government in employee taxes and other law firm corporate taxes over his 22 year illustrious and hard working career - how much has AUSA Dana Walsh (or her Indian husband Debashish Kumar working for Nomura Securities) paid to the federal U.S. Government, New York State, and New York City in taxes in the last 22 years?

7. AUSA Dana Walsh Kumar again makes a false statement - undersigned Debtor had a pending *bona fide* Offer in Compromise which suspends all IRS debt collection as well as a federal lawsuit in the SDNY in which AUSA Dana Walsh Kumar was opposing counsel on, and central to our OIC and lawsuit was that we did not owe this combined total IRS tax debt, that our previous accountant/CPA Israeloff Trattner in 2007-2008, who was biased towards Debtor's ex-wife Sharie, had artificially and dishonestly increased Debtor's personal tax liability in order to increase his monthly child support and other payments starting in 2008 when he was going through his divorce/child custody battle, amongst other causes of action that flowed into this bankruptcy case, when AUSA Dana Walsh Kumar refused to offer a reasonable settlement offer to his tax liability over a 3 year federal SDNY lawsuit, thus turning him into a serf, peasant, and money slave for tax liabilities that he never even owed.

8. Debtor did not ever "fail to pay his tax liabilities," he duly paid all annual and quarterly business and personal taxes for the past 22 years of business starting in March 2002, just had a small pocket of financial difficulty starting from his divorce/child custody battle coupled with the Bush/Obama economic crash from 2008 to approximately 2011, for which he applied for Offers in Compromise ("OICs") several times, refused over and over again by the IRS and government lawyers like AUSA Dana Walsh Kumar, preferring to accrue penalties and fees and interest rather than settling Debtor's unpayable and doubtful tax debt.

9. AUSA Dana Walsh Kumar again makes false statements, where she disrespectfully and derogatorily refers to Debtor's salaried Law Office Manager as his "wife" in an attempt to discount and dismiss the *bona fide* and valid tax exemptions, deductions that Debtor's accountants and CPAs have determined to be valid - it should be noted that Debtor has never been audited even once in his 22 year law firm ownership.

10. AUSA Dana Walsh Kumar again makes false, defamatory, slanderous, libelous statements and this is tortious.

11. AUSA Dana Walsh Kumar again makes false, defamatory, slanderous, libelous statements and this is tortious - each and every expenditure was used exclusively for law firm business use, and it should be noted that even the IRS did not either object or audit his law firm tax returns when he first received the first portion of the SBA loan in 2019 all the way to second disbursement in 2022.

12. AUSA Dana Walsh Kumar again makes false, defamatory, slanderous, libelous statements and this is tortious - in fact Debtor actually reduced his monthly office expenses after COVID

4

and inflation hit due to the Biden presidency as we could no longer afford our monthly rent in Manhattan and instead chose a cheaper monthly amount for our home law office business rent from more than $12,000 to $6000 per month.

13. We have filed official complaints against our CPA Accountant Michael Arons as well as directed him in writing (cc'ed to AUSA Dana Walsh Kumar) to make any requisite corrections which are beyond our ken and understanding - we can't force him to make those changes or speed up his work which we just fund out about a few weeks ago during our last deposition - we also notified AUSA Walsh Kumar that we did this (attached).

14. What was the result of a 1.5 year series of extensions on Debtor's bankruptcy case to conduct a "fishing expedition," which yielded no fruit other than the defamatory, slanderous, libelous, and tortious allegations made by AUSA Dana Walsh Kumar above.

15. It should be reminded that 270 Victory Boulevard, New Rochelle NY 10804 now also serves as Debtor's chief main law office where he conducts 90% of his legal work, consultations, research, etc.

16. Debtor is not a bankruptcy lawyer, but an immigration lawyer, so is often unable to properly defend or represent himself in these bankruptcy proceedings.

17. At a certain point in our past bankruptcy filings we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.

18. AUSA Dana Walsh Kumar again makes false, defamatory, slanderous, libelous statements and this is tortious - upon information and belief, the IRS did not write anything off for 2007 and 2008 as they were either fully paid or there was no liability thereon.

19. At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.

20. We have instead filed desperate requests for Offer in Compromise year after year for either lack of ability to pay the full amount, or doubt as to liability, all of which got rejected, year after year.

21. We retained Bankruptcy Bruce Bronson for this case, and this court allowed his withdrawal even though he provoked us and acted improperly, which severely hampered and inhibited our ability to properly and adequately represent Debtor interests, or to even hire another lawyer to replace him since White Plains New York is a small town unlike New York City, and every bankruptcy lawyer knows who Bruce Bronson, Judge Sean Lane, AUSA Dana Walsh Kumar, AUST Gregory Zipes, and Trustee Marianne O'Toole is.

22. Debtor does not know how to do certain things such as amendments that AUSA Dana Walsh Kumar wants him to do, and so had ordered his CPA to do so.

23. This bankruptcy court has continued to extend every single extension and courtesy to AUSA Dana Walsh Kumar and AUST Gregory Zipes with multiple extensions thus allowing them to engage in unprecedented fishing expeditions, subpoenas, forensic tax analysis, 10 hour plus depositions, literally going through 22 years of Debtor's tax returns with a magnifying glass

with all of the time, staff, and unlimited money that the federal and New York City government has, and has come up with absolutely nothing material, immoral, unethical or illegal, just a few *ad hominem*, racist, biased, sexist, and disrespectful comments, conjecture, "upon information and belief" weasel statements, defamatory, libelous, and slanderous statements which will be referred to the DOJ Office of Professional Responsibility.

24.   Debtor has more than fully cooperated with AUSA Dana Walsh Kumar and AUST Gregory Zipes, over and above the call of duty, enduring their legal and equitable flogging since February 2023.

25.   Any missing information was either calculated or in the sole/exclusive possession of former bankruptcy lawyer Bruce Bronson who, even though he was issued 3 subpoenas and cc'ed on emails since June 2023 to fully cooperate and comply with AUSA Dana Walsh Kumar, he for some reason he has continued to openly flout and refuse to provide Debtor's client file, original documents, or testimony thereon, since Debtor's requests first began in June 2023.

26.   It is not our fault that AUSA Walsh Kumar & her team of forensic accountants can not fully understand Debtor's submitted financial documents spanning 5 plus years with nearly 2 years of bankruptcy court scrutiny, and 3 years before that during Debtor's federal lawsuit against the IRS in the SDNY where AUSA Dana Walsh Kumar was the opposing counsel for the government.

27.   AUSA Dana Walsh Kumar again makes false, defamatory, slanderous, libelous statements and this is tortious - we file taxes using Schedule C - which is the tax return method our CPAs have used for the past 22 years without a problem.

28. Our bookkeeping, deductions, exemptions, receipts, diaries are maintained and produced by our accountant/CPA Michael Arons and before him CPA/Accountant Marc Albaum, whom we have also ordered in writing to fully cooperate/comply with AUSA Dana Walsh Kumar.

29. AUSA Dana Walsh Kumar seems to have a serious problem with lawful business deductions and exemptions per the United States Internal Revenue Code - perhaps she should resettle to Cuba or Communist China where the tax laws are more akin to her liking.

30. We remind this court that AUSA Dana Walsh Kumar and AUST Gregory Zipes forced Debtor to undergo depositions and examinations under oath for a total of 10 abusive hours.

31. AUSA Dana Walsh Kumar makes multiple false, defamatory, slanderous, libelous and tortious statements throughout her pleading, and she will be referred to the U.S. Department of Justice Office of Professional Responsibility with a FTCA Form 95 to the relevant federal agencies - she is also hereby afforded a formal "safe harbor notice" to correct herself, before Rule 11 sanctions are formally requested.

32. The figures and data for our bankruptcy filing were exclusively calculated and provided by former bankruptcy lawyer Bruce Bronson, who has since refused our subpoenas or requests for our client files since June 2023.

33. We have since filed official IRS and NYS tax complaints against CPA Michael Arons based on AUSA Dana Walsh Kumar's gripes and complaints, attached herein, as we do not even know, for example, what a "homestead exception" even is.

34. We have since filed IRS and NYS tax complaints against CPA Michael Arons, attached herein as we do not even know what this data is.

35. We have also filed complaints against former bankruptcy attorney Bruce Bronson, whom we subpoenaed for both our client file and his testimony, but he refuses to provide either even though we have been requesting this since June 2023.

36. Again, all of the data that AUSA Dana Walsh Kumar is requesting, is in the sole and exclusive physical possession and control of Bankruptcy Lawyer Bruce Bronson and CPA Michael Arons, whom we have filed complaints against.

37. At several times in her pleading, it is unclear if AUSA Dana Walsh Kumar is reporting on data from the bankruptcy petition, or the tax returns?

38. Once again, we complain that AUSA Dana Walsh Kumar continues to make false, defamatory, slanderous, libelous, tortious statements.

39. Again, AUSA Walsh Kumar refers to my fully salaried and taxed Law Office Manager as my "wife" in order to both diminish her pivotal role in the law firm small business, as well as the allowable IRC deductions/exemptions permitted therein.

40. Once again AUSA Dana Walsh Kumar makes false statements - we have provided any and all requested information and data to AUSA Dana Walsh Kumar over and over in writing for nearly 2 years.

41. Yes, everything has been completed to the best of my knowledge, information, and belief.

42. We have given orders and instructions to any and all relevant professionals and parties to make any requisite changes as per AUSA Dana Walsh Kumar, as well as cc'ed her on these orders/instructions.

43. We disagree with the dollar amount in AUSA Dana Walsh Kumar's tax liability chart, as we both dispute and have doubts as to liability for the reasons mentioned *supra*.

44. The vast majority of AUSA Dana Walsh Kumar's tax liability chart seem to be penalties and interest, while Debtor desperately tried to settle his outstanding tax debts with multiple Offers in Compromise, federal and state lawsuits, but no settlement offers from AUSA Dana Walsh Kumar were ever provided even though Debtor and his lawyers constantly asked.

45. Since we were rushed to get our tax return profit and loss to AUSA Dana Walsh Kumar and AUST Gregory Zipes by June 2023 instead of its due date of October 2023, our CPA Michael Arons and we rushed our 2022 tax return, for which we had a *bona fide* extension until October 2023.

46. We have since also filed a TIGTA complaint against a New York City IRS Examiner named Eric Frimpong who has been harassing us on behalf of AUSA Dana Walsh Kumar illegally for a few weeks now - and that is currently pending. It seems that AUSA Walsh Kumar and AUST Gregory Zipes deliberately rushed us to set a trap for FY 2022 by making us prepare and file our tax return months before its due date of October 2023 and within a matter of days, not even months in June 2023.

47. As we have repeatedly stated, we had pending OICs or federal lawsuits alleging improper conduct by the IRS, as well as disputes as to liability.

48. We did not ever "fail to pay taxes," we were pending OIC and/or federal lawsuits challenging the IRS.

49. AUSA Dana Walsh Kumar continues to make false, defamatory, slanderous, libelous, tortious statements in her pleading.

50. Once again, AUSA Dana Walsh Kumar appears to have a problem that my "wife" was also my Law Office Manager, with a taxed salary.

51. Debtor was doing well financially, right after COVID and when the immigration, family, and criminal defense courts and boders opened up, and Trump was in office. Now we are all in the financial toilet because AUSA Dana Walsh Kumar's favored President Biden, and his inflationary, communist, socialist, war mongering, Ukraine and Israel funding, America last policies are in full effect.

52. We mortgaged a home law office situated at New Rochelle NY because it was 1000% cheaper than living/working in Manhattan.

53. AUSA Dana Walsh Kumar repeatedly makes false, defamatory, slanderous, libelous, and tortious statements - we sometimes grossed between $50-$150,000 per month for years both before, during, and after taking the SBA loan, and it is quite impossible to trace where the liquid money starts, begins, and ends, as it was churned and burned over a period of a few

years, as it was also distributed several years apart - we used it mainly for employee salaries, office rent, office expenses, etc.

54. We spent money on security on our home law office such as cameras and bullet proofing, since I have practiced New York City criminal defense, immigration law, high conflict family law and divorce for the last 22 years, and I have received death threats.

55. When the Trump economy was good, for a few months we enjoyed our lives, but all of a sudden, after COVID and Biden took over, the economy and our business tanked, probably also when the communists at the Attorney Grievance Committee started to come after my law license, like they did to other Trump supporters and political allies such as former New York City Mayor and former SDNY US Attorney Rudy Giuliani.

56. We did not ever "ignore obligations to the IRS." We were in a *bona fide* abeyance of collections due to pending OIC and federal lawsuit against the IRS, which AUSA Dana Walsh Kumar could have settled with us, at any time.

57. Once again, AUSA Dana Walsh Kumar makes false, defamatory, slanderous, libelous tortious statements throughout her pleading.

58. I deduct office and business expenses wherever I work, in the proportion mandated by the IRS as promulgated by my accountants and CPAs, per the IRC.

59. No business expense, deduction, or exemption was ever improper at all, as confirmed by our accountants and CPAs, and zero audits in more than 22 years of business.

60. My wife was also our Law Office Manager, as we already said, and if we discussed business 99% of the time at a lunch or a dinner at a restaurant (very rare over the last few years - maybe 3 times), we legally deducted the lunch or dinner, as per our CPA.

61. AUSA Dana Walsh Kumar falsely states that we could not name any personal expenses, but that's not true, as we mentioned expenses for our dog and 3 cats (unless they were stress animals per the IRC), and our baby Gabriel's expenses, as non-deductible, and not business expenses, everything as per CPA Michael Arons' instructions and guidance.

62. Contrary to AUSA Dana Walsh Kumar's incendiary comments, nothing was ever "concealed" - we legally, ethically, morally, and lawfully deducted whatever we were allowed to do, as per the IRC, and as per our CPA Michael Arons and before him CPA Marc Albaum.

63. We qualified for loans at a certain time, because at the time we needed the money during the COVID government shutdowns - when we were able to hire more staff, we made more money.

64. We did not relocate - to date we still maintain our 30 Wall Street, 8th Floor, New York NY 10005 law office location, we just reduced our overall work/living expenses.

65. To correct AUSA Dana Walsh Kumar, we only deducted on our Schedule C only for business expenses, not personal expenses.

66. Because we were being victimized by a false lien from NYS CSEU which we sued them for in NYS Supreme Court in an Order to Show Cause/TRO, we were advised by our Attorney Robert Androsiglio (we have the text messages), to temporarily withdraw money and then re-deposit, which we did.

67. The capital was liquid and we were advised to protect the money from theft by NYC HRA and their false lien.

68. Our bank accounts were repeatedly closed without notice due to pressure and harassment from the IRS, for example CitiBank closed our account with zero notice, and we were forced to find a new law firm bank account.

69. We had always separated and earmarked cash because we did not want to use the loan, so even if it was our money, as we sometimes grossed $50-150,000 per month, we optimally wanted to return it in one chunk - but when the economy fell out after Biden taking office, and COVID, we found that we suddenly needed the money, and lawfully used it for business expenses.

70. We use 270 Victory Boulevard, New Rochelle NY as a home law office.

71. These were our own liquid funds, not SBA funds.

72. These were our own liquid funds, not SBA funds. Even if it was, it was for our home law office, a business expense as per our CPA Michael Arons.

73. We previously discussed that we needed security due to death threats as I have worked in criminal defense, immigration deportation defense, high conflict divorce, and family law for the last 22 years.

74. These were our own liquid funds, not SBA funds.

75. After constant harassment and pressure from the IRS, represented by AUSA Dana Walsh Kumar, our law firm banks repeatedly and routinely closed our accounts with zero notice over many years, and we were constantly forced to find a new law firm bank account. Or we were trying to avoid the theft by NYC HRA and their fake lien that we sued them for in NYS Supreme Court.

76. These were our own liquid funds, not SBA funds.

77. We did not relocate our business as we maintained (and still do) the 30 Wall Street, 8th Floor, Suite 8207, New York NY 10005 flagship office.

78. These were our own liquid funds, not SBA funds.

79. Once again AUSA Dana Walsh Kumar continues to make false, defamatory, slanderous, libelous and tortious statements - that's why AUSA Dana Walsh Kumar keeps using the weasel phrase "upon information and belief."

80. Any and all etchings on our bankruptcy filings or tax returns were either by CPA Michael Arons/Marc Albaum, or Bankruptcy Lawyer Bruce Bronson - see our pending complaints against them.

81. AUSA Dana Walsh Kumar continues to make false statements in her pleading - all of our books, documents, records, papers are with bankruptcy lawyer Bruce Bronson and/or CPA Accountant Michael Arons, whom we have told (ordered) to provide to AUSA Dana Walsh Kumar *et al*.

82. AUSA Dana Walsh Kumar keeps crowing on and on about how, even after we have furnished her and her team with each and every single stick of paper of our bank statements, credit card statements, tax returns for the last 5 years, that she still can not "make an intelligent inquiry of them," but the problem is, AUSA Dana Walsh Kumar and her team are clearly not "intelligent."

83. She complains that she "can not form an understanding of Debtor's finances," but that's her problem, not ours.

84. We do a Schedule C tax return, just like other small business owners.

85. Bankruptcy lawyer Bruce Bronson filled in and filed said bankruptcy petition, we subpoenaed him and our case file, original documents, testimony, and valuation data since June 2023, but to date, he has not either cooperated, complied, appeared, or responded, and neither this court, nor AUSA Dana Walsh Kumar nor AUST Gregory Zipes have assisted us

with getting our files from him (although they have helped other enemies of ours such as Karen Goldberg Sager in obtaining their client files - oh, the irony).

86. These were our own liquid funds, not SBA funds. Even so SBA funds are allowed for *bona fide* business expenses, including home law office expenses.

87. AUSA Dana Walsh Kumar complains that we did not adequately explain why our business suddenly tanked, before we filed for bankruptcy - but we did explain - Biden is terrible as a President, his policies are bad, and he and his administration ruined this country's economy.

88. We had pending OICs, or federal lawsuits during certain periods, and the IRS can not collect taxes past 10 years pursuant to the Collection Statute Expiration Date (CSED).

88a. The abuse of authority in trying to enforce tax debts that date from 15 years ago after Debtor's multiple OIC requests since 2008 is illegal, unethical, and immoral as per the 10 year Collection Statute Expiration Date (CSED).

89. We had to protect our law firm bank account money, as per our lawyer Robert Androsiglio's legal advice, due to the false lien and seizure by NYC HRA, and the repeated bank closures brought on by the constant harassment and pressure from AUSA Dana Walsh Kumar and her client, the IRS, poking around and harassing bank staff (per our federal lawsuit).

**WHEREFORE**, for the above referenced reasons,

A. Approve Debtor's discharge;

B. Determine that Debtor's federal income tax liabilities for tax years 2009-2013, 2015, and 2022, including interest and penalties, are dischargeable;

C. Determine that the SBA Loan is dischargeable; and

D. Award the Debtor costs in this action, and such other and further relief as the Court determines is just and proper.

**Dated:** 3/28/24

Respectfully submitted,

RAHUL DEV MANCHANDA
*Pro Se* Debtor

270 Victory Boulevard
New Rochelle, NY 10804
Telephone: (212) 968-8600
Email: rdm@manchanda-law.com

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:  DANA WALSH KUMAR
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741
Email: dana.walsh.kumar@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| RAHUL DEV MANCHANDA, | Case No. 23-22095 (SHL) |
| Debtor. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Adv. Proc. No. 24-_____ (SHL) |
| -  against  - | |
| RAHUL DEV MANCHANDA, | |
| Defendant. | |

## COMPLAINT TO OBJECT TO DISCHARGE
## OR, ALTERNATIVELY, DETERMINE NONDISCHARGEABILITY

Plaintiff the United States of America (the "United States"), on behalf of the Internal

Revenue Service ("IRS") and the Small Business Administration ("SBA"), by and through its

attorney, Damian Williams, United States Attorney for the Southern District of New York, seek to

obtain a judgment against Defendant Rahul Dev Manchanda ("Defendant" or "Manchanda")

determining: (a) that he is not entitled to discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3),

(a)(4), and (a)(5); or (b) if a discharge is granted, (1) that his federal income tax liability for tax

year 2022 is nondischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i); (2) that his

federal income tax liability for tax years 2009-2015 is nondischargeable under 11 U.S.C.

§ 523(a)(1)(C); and (3) that a $500,000 COVID-19 Economic Injury Disaster Loan ("EIDL") from

the SBA to Manchanda's law firm and guaranteed by Defendant is nondischargeable under 11

U.S.C. § 523(a)(2). The United States alleges upon information and belief as follows:

*[margin annotation, right:]* The abuse of authority in trying to enforce tax debts that date from 15 years ago after Debtor's multiple OIC requests since 2008 is illegal, unethical and immoral as per the 10 year Collection Statute Expiration Date (CSED).

**INTRODUCTION**

1.    On February 4, 2023, Manchanda filed for bankruptcy under Chapter 7 of Title 11

of the United States Code (the "Bankruptcy Code") in an effort to discharge various debts,

including hundreds of thousands of dollars of federal tax liabilities that he owes the IRS and

hundreds of thousands of dollars he owes the SBA as a guarantor, while seeking to retain a

$900,000 home and luxury watches for himself and his wife, and continuing to lease two luxury

automobiles.

*[margin annotation, left:]* AUSA Dana Walsh Kumar has continuously referred to Debtor's Polish wife in a derogatory manner, presumably because she is also married to an Indian man and can not accept the fact that Debtor's wife serves as his law firm manager, supervising past staff, managing all billing and accounts, insurance policies, and hundreds of other tasks for which she was paid an annual salary which was actually below market rates, but any and all legal, ethical and moral deductions and exemptions Dana Walsh Kumar objected to both in writing and verbally during hearings and depositions - this kind of racism and discrimination is unacceptable and colors everything she writes and states in her objections.

2.    Manchanda is a lawyer and solely owns a law firm—Manchanda Law Office PLLC

("Manchanda Law Office"). The law firm's website touts Manchanda as an "award-winning

attorney" with "expertise as a New York immigration lawyer, a criminal defense counselor and in

multiple other areas."

*[margin annotation, right:]* This law firm has now also declared bankruptcy in case index 23-11805 as per the profit and loss showing zero income for 6 months plus before filing.

3.    Manchanda has accumulated hundreds of thousands of dollars in tax liabilities

going back to 2009, despite having earned substantial revenue from his law firm and living

lavishly. Indeed, in 2022, just months before filing for bankruptcy, Manchanda described his

business as doing great and purchased a Rolex watch for his wife, leased a BMW sport utility

vehicle, and purchased a new home for almost $900,000. Manchanda knew of his tax liabilities

when he made these purchases; he simply ignored the liabilities and then filed for bankruptcy

seeking to discharge them.

*[margin annotation, left:]* Yes our law firm did exceedingly well when Republicans and conservatives have been in office, but seem to take a financial nosedive when leftist, socialist, fellow communist Democrats assume the Presidency - but was certainly good for career government workers such as AUSA Dana Walsh Kumar - Debtor like all small business owners has paid tens of millions of dollars in employee taxes and other law firm corporate taxes over his 22 year illustrious and hard working career - how much as AUSA Dana Walsh (or her Indian husband Debasins Kumar) paid in the last 22 years?

*[margin annotation, bottom:]* This is a false statement - undersigned Debtor has a pending bona fide Offer in Compromise pending which suspends all IRS debt collection as well as a federal lawsuit in the SDNY which AUSA Dana Walsh Kumar was opposing counsel on - and central to our OIC and lawsuit was that we did not owe this debt, that our previous accountant who was biased towards Debtor's ex-wife has artificially increased his personal tax liability in order to increase his monthly child support and other payments starting in 2008, amongst other causes of action that flowed into this bankruptcy case when Walsh Kumar refused to offer a settlement to his tax liability thus turning him into a serf, peasant and money slave for tax liabilities that he never owed.

4.  In addition to failing to pay his tax liabilities, upon information and belief, Manchanda also concealed the true extent of his income by claiming as deductible business expenses on his federal tax returns nonqualifying items such as designer clothing, the Rolex watch he purchased for his wife, and the full amount of the rent or mortgage payments for his primary residence. Manchanda has been claiming personal expenses as deductible business expenses for years, thus artificially decreasing his taxable income.

5.  Moreover, Manchanda improperly used the proceeds of a $500,000 SBA COVID-19 EIDL loan to his law firm to pay for personal expenses. Although the terms of the loan required the loan proceeds to be used for working capital to alleviate business hardships associated with the COVID-19 pandemic, Manchanda instead wrongly transferred the proceeds to different bank accounts and used them for the downpayment on his home, to make mortgage payments, and to pay for thousands of dollars' worth of home improvements.

6.  Manchanda then filed for bankruptcy seeking to discharge his debts to the IRS and SBA debts, among others, despite his failure to pay his taxes for many years and violation of the EIDL loan agreement. His bankruptcy petition and the accompanying schedules and statement of financial affairs contain false statements regarding his finances.

7.  The United States thus objects to Manchanda's discharge under 11 U.S.C. § 727 (Counts 1 through IV), and alternatively seeks judgment that his debts to the IRS and SBA should be excepted from discharge under 11 U.S.C. § 523(a) (Counts V through VII).

## JURISDICTION AND VENUE

8.  This is an adversary proceeding brought pursuant to 11 U.S.C. § 727(a) to object to the discharge sought by Manchanda through this bankruptcy, and otherwise to determine that his debts to the IRS and the SBA are excepted from discharge under 11 U.S.C. § 523(a).

3

---

*Handwritten annotations:*

Debtor did not "fail to pay his tax liabilities," he duly paid all taxes from 2014 to the present day, just that small pocket starting from Obama/Bush economic crash from 2008 to approximately 2011 for which he applied for OICs several times.

These are again false statements, where AUSA Dana Walsh Kumar disrespectfully refers to Debtor's law office manager as his "wife" in an attempt to discount the bona fide and valid exemptions, deductions that Debtor's accountants and CPAs have deterremed to be valid - it should be noted that Debtor has never been audited even once in his 22 year law firm ownership.

This is a false, defamatory, slanderous, libelous statement and is tortious - see FTCA.

This is also a false statement - each and every expenditure was used exclusively for law firm business use, and it should be noted that even the IRS did not either object or audit his law firm tax returns when he first received SBA loan in 2019 all the way to 2022.

This is another false, defamatory, slanderous, tortious statement from AUSA Dana Walsh Kumar in fact Debtor actually reduced his monthly office expenses after COVID and inflation hit due to the Biden presidency as we could no longer afford our monthly rent in Manhattan and had to reduce all our monthly amount for our law firm expenses from more than period and he has not corrected them.

We have filed official complaints against our CPA and Accountant Michael Arons as well as directed him to make the requisite corrections which are beyond our ken and understanding - we can force him to make those changes or speed up his work - we also notified AUSA Walsh Kumar that we did this (attached).

9.      The district court has subject matter jurisdiction over this matter pursuant to 28

U.S.C. § 1334(b), and this case is referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a)

and the Southern District of New York's Amended Standing Order of Reference Re: Title 11,

M10-468, 12 Misc. 00032, dated January 31, 2012 (Preska, C.J.).

10.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (J).

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1409.

12.     This Complaint is timely filed as the deadline for the United States to file a  Which was the
result of a 1.5
complaint objecting to discharge was extended through and including March 25, 2024, by an order  year series of
extensions on
dated January 17, 2024.  *See* Bankruptcy Case No. 23-22095 (SHL), ECF No. 110.  Debtor's
bankruptcy
**THE PARTIES**  case to
conduct a
13.     The Plaintiff is the United States of America, on behalf of the IRS and the SBA.  "fishing
expedition"
14.     The Defendant, Rahul Dev Manchanda, is the debtor in the associated bankruptcy  which yielded
no fruit other than the defamatory,
proceeding, No. 23-22095, brough under Chapter 7 of the Bankruptcy Code.  He resides at 270  which
Victory Boulevard, New Rochelle, New York 10801 ("270 Victory Boulevard"),  slanderous, libelous, and tortious
which also serves as his chief main law office where he conducts 99% of his legal  allegations made above.
work, consultations, research, etc  **FACTUAL ALLEGATIONS**

A. Manchanda's Prior Bankruptcy Proceedings

15.     On October 4, 2011, Manchanda filed a voluntary petition in this Court pursuant to  Debtor is not a
bankruptcy
Chapter 7 of the Bankruptcy Code, which was assigned case number 11-14666.  This case was  lawyer, but an
immigration
dismissed on January 8, 2012.  lawyer, so is
often unable to
16.     On September 3, 2013, Manchanda filed a voluntary petition for bankruptcy in this  properly defend
or represent
Court pursuant to Chapter 7 of the Bankruptcy Code, which was assigned case number 13-12880.  himself in these
proceedings.
17.     In that petition, Manchanda listed federal tax liabilities he owed the IRS of more
than $500,000 for tax years 2007-2012.  At a certain point we were able to retain bankruptcy attorneys including but not
limited to Julio Portilla, others.

4

18.     On January 13, 2014, Manchanda received a discharge of all debts dischargeable under 11 U.S.C. § 523(a). On May 12, 2014, consistent with the discharge order, the IRS wrote off Manchanda's unpaid federal income tax liabilities for 2007 and 2008.

*This is false upon information and belief, the IRS did not write anything off for 2007 and 2008 as they were either fully paid or there was no liability thereon.*

19.     On April 30, 2014, Manchanda filed a separate voluntary petition for bankruptcy in this Court pursuant to Chapter 13 of the Bankruptcy Code, which was assigned case number 14-11259. On May 14, 2024, Manchanda filed a proposed Chapter 13 plan in that case.

*At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.*

20.     On May 23, 2014, the IRS filed a proof of claim in the Chapter 13 bankruptcy listing secured claims for tax years 2009-2011 totaling $228,376.75, unsecured priority claims for tax years 2012-2013 totaling $21,046.64, and unsecured general claims totaling $1,538.48. On August 29, 2014, the United States, on behalf of the IRS, objected to confirmation of Manchanda's Chapter 13 plan because it failed to provide for full payment of the IRS's secured and unsecured priority claims as required by 11 U.S.C. §§ 1322(a)(2), 1325(a)(5).

*At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.*

21.     On January 7, 2015, the Court granted Manchanda's motion to voluntarily dismiss his Chapter 13 case. *At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.*

22.     On January 29, 2016, Manchanda filed another voluntary petition for bankruptcy in this Court pursuant to Chapter 13 of the Bankruptcy Code, which was assigned case number 16-10222. On February 16, 2016, Manchanda filed a proposed Chapter 13 plan in that case.

*At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.*

23.     The IRS filed a proof of claim listing secured claims totaling $268,229.25 for tax years 2009-2013 and unsecured priority claims totaling $8,000 for 2015. On May 5, 2016, the United States, on behalf of the IRS, objected to Manchanda's Chapter 13 plan because it did not provide for full payment of the IRS's secured and unsecured priority claims as required by 11 U.S.C. §§1322(a)(2), 1325(a)(5). *At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.*

5

24.    On January 27, 2017, the Court granted Manchanda's motion to voluntarily dismiss this Chapter 13 case.

At a certain point we were able to retain bankruptcy attorneys including but not limited to Julio Portilla, others.

25.    To date, Manchanda has not paid the tax liabilities he previously sought to discharge through his Chapter 13 petitions.

We have instead filed desperate requests for Offer in Compromise year after year for either lack of ability to pay the full amount, or doubt as to liability, all of which get rejected, year after year.

B. The Current Bankruptcy Proceeding

26.    On February 4, 2023, Manchanda filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, along with his schedules of assets and liabilities and a Statement of Financial Affairs.

We retained Bankruptcy Bruce Bronson for this case.

27.    On February 25, 2023, Manchanda filed an amended Statement of Financial Affairs. We retained Bankruptcy Bruce Bronson for this case.

28.    On March 8, 2023, Manchanda filed amended schedules of his assets and liabilities. We retained Bankruptcy Bruce Bronson for this case.

29.    Manchanda was represented by counsel when he filed the instant Chapter 7 petition. We retained Bankruptcy Bruce Bronson for this case. The petition and schedules bear Manchanda's electronic digital signature.

30.    Manchanda's counsel withdrew from his representation in or around April 20, 2023. And this court allowed it, which severely hampered and inhibited our ability to properly and adequately represent Debtor interests.

31.    Manchanda, who is also a lawyer, has not amended his petition since his counsel withdrew. Debtor does not know how to do this.

32.    In or around May 2023, before the initial deadlines expired in accordance with Federal Rule of Bankruptcy Procedure 4004, the United States moved to extend its time to object to Manchanda's discharge in this case pursuant to 11 U.S.C. § 727 and to file an adversary proceeding contesting the dischargeability of Manchanda's debts to the IRS and SBA pursuant to 11 U.S.C. §§ 523(a)(2), (4) or (6).  The Court granted the motion and extended the United States' deadline to object to September 8, 2023.  The Court subsequently extended these deadlines twice more, ultimately extending them until March 25, 2024.

The court has continued to extend every single extension and courtesy to AUSA Dana Walsh Kumar and AUST Gregory Zipes with multiple extensions thus allowing them to engage in unprecedented fishing expeditions, subpoenas, forensic tax analysis, literally going through 22 years of Debtor's tax returns with a magnifying glass with all the time, staff, unlimited money that the federal New York City government has, and has come up with absolutely nothing immoral, unethical or illegal, just a few ad hominem, racist, biased and disrespectful comments and defamatory, libelous, and slanderous statements which will be referred to the FTCA.

6

33.    On June 1, 2023, the Court ordered Manchanda to produce certain documents relating to his finances and appear for an examination pursuant to Federal Rule of Bankruptcy 2004. *Debtor fully did so.*

34.    Manchanda produced some responsive records, but failed, among other things, to provide "documents showing how [he] calculated income on Schedule I" to his bankruptcy petition, "documents related to the valuation of . . . Manchanda Law Office," "[m]onthly statements for all debts listed in the Schedules . . . for the two (2) years prior to the date of filing of the Petition," and "documents relating to gifts or transfers made to or from [Manchanda] having a value in excess of $100.00 for the past two years." *The missing information was calculated or in the sole/exclusive possession of former bankruptcy lawyer Bruce Bronson who, even though he was issued 3 subpoenas and cc'ed on emails to fully cooperate and comply with AUSA Dana Walsh Kumar refused to provide Debtor's file or testimony thereon.*

35.    The documents that Manchanda did produce, which included tax returns and certain *ALL* bank statements, do not paint a clear picture of Manchanda's finances. Manchand does not have any personal checking or savings accounts, and uses his business accounts for both personal and business expenses. Apart from some handwritten notations indicating whether expenses were business or personal, Manchanda did not produce records in a form that a third party could review with clarity. *It is not our fault that AUSA Walsh Kumar & her team of forensic accountants suck.* *False - we file taxes using Schedule C - which is the tax return method our CPAs have used for the past 22 years without a problem.* *Our bookkeeping, deductions, exemptions, receipts, diaries are maintained and produced by our accountant/CPA whom we have also ordered to cooperate/comply with Walsh Kumar.*

36.    In addition, Manchanda labeled many seemingly personal expenses, such as purchases at clothing companies, a landscaping business, and airline tickets for Manchanda's mother-in-law, as business expenses on the bank records produced. *AUSA Walsh Kumar has a problem with lawful business deductions, exemptions per the Internal Revenue Code, not with Debtor. Perhaps she should resettle to Cuba or Communist China.*

37.    Manchanda appeared for two examinations pursuant to Rule 2004. The first examination of Manchanda took place via Zoom on September 20, 2023. The examination was continued, and the continued examination took place on January 26, 2024. *For a total of 10 abusive hours.*

C. Manchanda's Petition and Schedules Contain False Statements

38.    Manchanda's bankruptcy petition and its related filings contain numerous false statements. *This is a false, defamatory, slanderous, libelous and tortious statement and will be referred with a FTCA Form 95 to the relevant federal agencies.*

39.     In his amended Schedule A/B to the petition, Manchanda disclosed that he owned property with a total value of $871,601, consisting of $845,265 in real estate, $11,336 in vehicles, and $14,800 in personal and household items, including a Rolex watch valued at $5,500. Manchanda also indicated that he owned Manchanda Law Office outright, and valued his interest in the law firm at $100.

These figures and data were exclusively calculated and provided by former bankruptcy lawyer Bruce Bronson who has since refused our subpoenas or requests for our client files.

40.     However, Manchanda provided no documentation supporting the valuation of his law firm at $100. Manchanda testified that he did not know why the Manchanda Law Firm was valued at $100 in his Schedule A/B nor has he explained how that value was assigned.

These figures and data were exclusively calculated and provided by former bankruptcy lawyer Bruce Bronson who has since refused our subpoenas or requests for our client files.

41.     In Schedule C to the petition, Manchanda claimed that $12,200 of his personal and household items, and $179,975 of real property, were exempt pursuant to 11 U.S.C. § 522(b)(3). Manchanda checked the box stating that he was claiming a homestead exemption of more than $189,050, and stated that he did not acquire the property at issue within 1,215 days before filing the Chapter 7 Petition. Manchanda, however, purchased his current residence at 270 Victory Boulevard in July 2022, approximately 213 days before filing his petition, and upon information and belief, moved there shortly thereafter.

We have since filed IRS and NYS tax complaints against CPA Michael Arons, attached herein as we do not even know what a "homestead exception" is.

42.     In his Schedule D, Manchanda listed only $122,957 in secured liabilities to the IRS. However, as of the petition date, Manchanda owed a total of $373,759.84 in secured liabilities to the IRS.

We have since filed IRS and NYS tax complaints against CPA Michael Arons, attached herein as we do not even know what this data is.

43.     On Schedule I, Manchanda indicated that he is an attorney employed by Manchanda Law Office, located at 30 Wall Street, Suite 8207, New York, New York, and that he earned $0 per month in wages, but received $4,250 per month in interest and dividends from the firm. He listed total monthly income as $7,527.53, which included his wife's monthly income that she received as an employee of Manchanda Law Office.

We have also filed complaints against former bankruptcy attorney Bruce Bronson, whom we subpoenaed fr both our client file and his testimony, but he refuses to provide either even though we have been requesting this since June 2023.

44.     Manchanda did not, however, provide the required statement showing gross

recipes, ordinary and necessary business expenses, and the total monthly net income for the

business. ~~Nor has he explained how this monthly income, which is supposedly derived from his~~

law firm, could be reconciled with the valuation of the firm at $100.

*Again, this data is in the sole and exclusive possession and control of Bruce Bronson and Michael Arons, whom we have filed complaints against.*

45.     In his Schedule J, Manchanda listed his total monthly expenses as $7,535.  This

amount does not include the monthly mortgage payment of $6,517.39 for his personal residence

where he resides with his wife and son, which he notes that he pays "from his business since he

uses it for business purposes."

46.     In Part 1 of his Statement of Financial Affairs, Manchanda indicated that he had

not lived anywhere other than where he lived as of February 2023 during the prior three years.

Manchanda, however, purchased his current residence at 270 Victory Boulevard in July 2022, and

upon information and belief, had moved there shortly after purchasing the home.

*Is this data taken from the bankruptcy petition, or the tax return?*

47.     In Part 2 of his Statement of Financial Affairs, Manchanda listed his gross income

from January 1 to December 31, 2022, as $52,000 and his gross income from January 1 to

December 31, 2021, as $51,999. Manchanda attributed this income to operating a business, which,

upon information and belief, was derived from Manchanda's tax returns that included improper

business deductions.

*This is a false, defamatory, slanderous, libelous, tortious statement.*

48.     In Part 5 of his Statement of Financial Affairs, Manchanda averred that he did not

give any gifts with a total value of more than $600 per person.  In or around June 2022, however,

he purchased a Rolex watch for his wife, which cost approximately $10,000.

*Again, AUSA Walsh Kumar refers to my law office manager as my "wife" to both diminish her pivotal role in the law firm small business as well as the*

49.     In Part 11 of Manchanda's Statement of Financial Affairs, he failed to provide

certain required information regarding his business, including the name of its accountant or

*allowable IRC deductions/exemptions permitted therein.*

9

bookkeeper, the business's employer identification number, and the dates the business has been in

existence. This is a false statement - we have provided this information and data to AUSA Dana Walsh Kumar over and over in writing for nearly 2 years.

50.    Manchanda filed the petition, its accompanying schedules, and his Statement of

Financial Affairs, certifying, under penalty of perjury, that each was true and correct to the best of

his knowledge, information, and belief. He has not amended or sought to amend any of these

filings since filing for bankruptcy. We have given orders and instructions to any and all relevant

Yes, to the best of my knowledge, information, and belief.

professionals and parties to make any requisite changes as per AUSA Dana Walsh Kumar, as well as cc'ed her on these orders/instructions.

D.  Manchanda's Federal Tax Debts

51.    On May 5, 2023, the IRS filed a proof of claim in Manchanda's current bankruptcy

proceeding, which it amended on May 8, 2023, and again on November 21, 2023. The IRS's latest

amended proof of claim lists the following income tax liabilities owed by Manchanda:

| Tax Period | Date Tax Assessed | Tax Due ($) | Penalties Due as of Petition Date ($) | Interest Due as of Petition Date ($) | Total Due as of Petition Date ($) | Date Notice of Tax Lien Recorded |
|---|---|---|---|---|---|---|
| 2009 | 11/22/2010 | 75,129.34 | 20,756.24 | 50,515.43 | 146,401.01 | 05/06/2011; 12/03/2020 |
| 2010 | 11/21/2011 | 56,280.00 | 15,517.00 | 33,811.86 | 105,608.86 | 11/01/2022; 09/23/2013 |
| 2011 | 11/19/2012 | 35,096.00 | 9,449.76 | 19,229.07 | 63,774.83 | 09/23/2013; 11/01/2022 |
| 2012 | 09/23/2012 | 15,260.00 | 4,071.00 | 7,531.37 | 26,862.37 | 11/01/2022 |
| 2013 | 06/02/2014 | 5,296.00 | 1,419.00 | 2,341.50 | 9,056.50 | 02/06/2015 |
| 2015 | 11/28/2016 | 13,792.00 | 3,448.00 | 4,816.27 | 22,056.27 | 11/01/2022 |
| 2022 | 11/13/2023 | 3,236.00 | | 138.33 | 3,374.33 | |
| Total | | 204,089.34 | 54,661.00 | 118,383.83 | 377,134.17 | |

We disagree with this dollar amount as we dispute and have doubts as to liability.

52.    Upon information and belief, for all of the tax years in question, Manchanda filed

Schedules C (Form 1040) to report income from his law firm, which he operated as a sole

proprietorship. The vast majority seems to be penalties and interest while Debtor desperately tried to settle his outsanding tax debts with multiple Offers in Compromise, federal and state lawsuits, but not settlement offers from AUSA Dana Walsh Kumar.

53.     Manchanda has failed to pay the income taxes he owed for tax years 2009-2013 and 2015, and the IRS has recorded notices of federal tax lien for these liabilities. Manchanda thus has secured tax liabilities totaling $373,759.84.

54.     Manchanda filed an amended 2022 tax return in or around October 2023 after he Since we were rushed to get our tax returns profit and loss to AUSA and AUST by June 2023 we rushed our 2022 tax return which we filed the Chapter 7 petition in this case. had a bona fide extension until October 2023.

55.     As of the date of its latest amended proof of claim, the IRS had calculated Manchanda 2022 tax liability as $3,374.33. However, in February 2024, the IRS began an examination of Manchanda's tax liability for 2022 based on potentially improper business deductions and that examination is underway. The IRS sent an initial examination letter to Manchanda requesting that he provide documentation to verify business expenses claimed on his return. Manchanda did not provide any documentation to the IRS and instead, on March 15, 2024, Manchanda sent the IRS a fax alleging that the IRS violated the automatic stay pursuant to 11 U.S.C. § 362. If Manchanda fails to provide the IRS with documentation to verify business expenses claims on his return, then Manchanda may have additional tax liability for 2022.

*We have since also filed a TIGTA complaint and that is currently pending. It seems that AUSA Walsh Kumar and AUST Zipes deliberately rushed us to set a trap for FY 2022 b making us prepare and file our return before October 2022 within a matter of days, not months.*

56.     Despite owing taxes from as far back as 2009 and continuing to operate his law firm, which generated over $970,000 in revenue in 2022 and $660,000 in revenue in 2021, Manchanda has failed to pay his tax liabilities for tax years 2009-2013, 2015, and 2022.

*As we have repeatedly stated, we had pending OICs or federal lawsuits alleging improper conduct by the IRS, dispute as to liability.*

*We did not "fail to pay taxes," we were pending OIC and/or federal lawsuits challenging IRS.*

E.   Manchanda's Lavish Lifestyle and Improper Tax Deductions

57.     In at least the last few years preceding his bankruptcy, Manchanda spent money freely and lived lavishly. *This is another false, defamatory, slanderous, libelous, tortious statement.*

58.     In or around June 2022, about eight months before filing for bankruptcy, Manchanda purchased a Rolex watch, worth approximately $10,000, for his wife. *Law Office Manager with a salary.*

59.     In 2019, Manchanda purchased a Rolex watch for himself, which according to his petition, was worth $5,000. *This was when we were doing well financially, right after COVID when the courts and immigration opened up, and Trump was in office. Now we are all in the financial shitter because AUSA Dana Walsh Kumar's favored President Biden, and his inflationary, communist, socialist, war mongering, Ukraine and Israel funding, America last policies are in full effect - thanks!*

60.     In July 2022, Manchanda purchased a house for his family in New Rochelle, New York for $885,000. As discussed in more detail below, Manchanda used the proceeds from a loan his law firm received from the SBA to fund the downpayment for this home.

*[handwritten: We mortgaged a law office situated at New Rochelle NY because it was 100% cheaper than living/working in Manhattan.]*

*[handwritten: When the economy was doing well.]*

*[handwritten: False!]*

*[handwritten: This is a false, defamatory, slanderous, libelous, and tortious statement - we grossed between $50-150,000 per month for years both before, during, and after taking the SBA loan and it is quite impossible to trace where the liquid money starts, begins, and ends as it was churned and burned over a period of a few years as it was distributed years apart - we used it mainly for employee salaries, office rent, office expenses, etc]*

61.     Manchanda then spent tens of thousands of dollars on home improvements for the new home, including window treatments, landscaping, painting, and brickwork.

*[handwritten: We spent money on security such as cameras since I practice criminal defense, immigration law, high conflict family law and divorce, and have received death threats.]*

62.     Also in July 2022, Manchanda leased a new BMW, which required making an initial payment of approximately $4,000.

*[handwritten: When the Trump economy was good.]*

63.     Moreover, in 2022, Manchanda was a member of the Knollwood Country Club in Elmsford, New York.

*[handwritten: For a few months before we couldnt afford it anymore.]*

64.     Indeed, during his examination, Manchanda testified that in or around September 2022, approximately five months prior to filing for bankruptcy, he was "not having any financial difficulty," he was "pulling 50 to 100 thousand," and "making lots of money."

*[handwritten: Yes and all of a sudden the economy and our business tanked, probably when the communists at the Attorney Grievance Committee started to come after my law license.]*

65.     These expenses are offered as examples of the significant expenditures Manchanda made while he ignored his obligations to the IRS. Upon information and belief, Manchanda incurred additional unnecessary expenditures in the past several years while not paying his tax obligations.

*[handwritten: WE did not ignore "obligations to the IRS." We were in a bona fide abeyance of collections due to pending OIC and federal lawsuit which AUSA Dana Walsh Kumar could have settled with us, at any time.]*

66.     In addition, Manchanda concealed many of these lavish expenses and made his business appear less profitable than it was to avoid paying taxes by improperly labeling personal expenses as business expenses and deducting them from his taxable income on his tax returns.

*[handwritten: This is a false, defamatory, slanderous, libelous tortious statement.]*

67.     For example, Manchanda deducted the rent on *both* his law firm's office space *and* his personal residence in Manhattan. He has argued this practice was appropriate because he would "meet clients at [his] home," "had all [his] client files there," and was "doing [his] consultations there, and legal work there."

*[handwritten: Yes I deducted for (before he moved to New Rochelle) wherever I worked, in the proportion mandated by the IRS as promulgated by my accountants and CPAs per the IRC.]*

12

68.     Upon information and belief, Manchanda continued this practice when he moved to New Rochelle, when he improperly continued to deduct as business expenses the rent for his business address along with the mortgage payments for his newly purchased family home.

*This is not improper at all, as confirmed by our accountants and CPAs.*

69.     Manchanda also deducted as business expenses any costs for which he could conceive of any relation to his business, including, for example, a Valentine's Day dinner with his wife, who he employed as his law office manager.  Manchanda purported to justify this practice by claiming that he is "all business, all the time," and was unable at his deposition to describe any personal expense that he would not consider to be a business expense.

*My wife is also our law office manager, as we already said, and if we discussed business 99% of the time, we legally deducted the dinner, as per our CPA*

*That's not true - we mentioned our dog and cats, and our baby's expenses.*

70.     In his amended 2022 tax return, Manchanda reported $972,056 in gross receipts or sales and $919,573 in total expenses for his law firm, resulting in a $52,483 profit.  The expenses included $193,171 in "other business property," $76,508 in "office expenses," $63,924 in "Dues and Subscriptions," and approximately $10,000 for travel and meals.

*As per CPA Michael Arons.*

71.     Upon information and belief, these supposed business expenses included costs relating to the purchase and mortgage payments for his family home.  Manchanda thus not only incurred lavish personal expenses in the months leading up to filing for bankruptcy, but also concealed those expenses by claiming them as business expenses and deducting them on his tax return.

*Nothing was "concealed," we legally and lawfully deducted whatever we were allowed to do, as per the IRC.*

72.     Manchanda thus filed for bankruptcy in February 2023 just months after his law firm earned nearly $1 million in 2022, while he belonged to a country club and had recently purchased a Rolex and a new home, and leased a BMW.

F.  Manchanda's SBA Loan

73.     On July 21, 2020, Manchanda, signed a loan authorization and agreement on behalf of his law firm, Manchanda Law Office, for a $150,000 COVID-19 EIDL loan disbursed by the SBA.  This loan was assigned SBA loan number XXXXXX8110.

13

74.     On November 17, 2021, Manchanda, executed an amended loan authorization and agreement form on behalf of his law firm, in which the SBA authorized an additional disbursement of $350,000 under the same loan number, for a total SBA COVID-19 EIDL loan of $500,000 (the "SBA Loan").

75.     The COVID-19 EIDL program provided funding to help small businesses recover from the economic impacts of the COVID-19 pandemic.

We qualified because at the time we needed the money - when we were able to hire more staff we made more money.

76.     Pursuant to the COVID-19 EIDL loan documents, the SBA Loan incurs interest at a rate of 3.75% per year.  Payments on the SBA Loan are due every month, beginning in January 2023—thirty months from the date of the original note, which was executed in July 2020.

77.     Pursuant to the loan authorization and agreement for the SBA Loan, the borrower (Manchanda Law Office) was required to "use all the proceeds of [the] Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter."  It also required the borrower to "obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement."

78.     The loan authorization and agreement for the SBA loan further states that the borrower "will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior permission of SBA."

We did not relocate - to date we still maintain our 30 Wall Street, 8th Floor, New York NY 10005 law office location, we just reduced our overall living expenses.

79.     The first installment of the SBA Loan, in the amount of $149,900, was deposited into Manchanda Law Office's Citibank checking account on July 22, 2020.

80.     Upon information and belief, Manchanda used this Citibank checking account for his law firm's business operating expenses as well as for his personal expenses.
Only for business expenses.

14

81.    Also on July 22, 2020, Manchanda withdrew $150,000 from the law firm's Citibank

checking account. Because we were being victimized by a false lien from CSEU which we sued them for in NYS
Supreme Court in an Order to Show Cause/TRO.

82.    Manchanda also applied for and received a personal $19,000 Paycheck Protection

Program ("PPP") loan from the SBA, which was deposited into his law firm's Citibank checking

account on July 2, 2020.[1] Which was completely used for business expenses as well, very quickly.

83.    On August 13, 2020, Manchanda deposited $168,302 into his law firm's Citibank This is a false

savings account, which, upon information and belief, included the proceeds from the SBA Loan, statement
since the
capital was
which had been withdrawn less than a month earlier from the firm's checking account. liquid and we
were advised
84.    On November 30, 2020, Manchanda withdrew $148,342 from the law firm's to protect the
money from
Citibank savings account, which, upon information and belief, included the proceeds from the SBA theft by NYC
HRA and their
Loan, which had been deposited into that account in August 2020.    On January 28, 2021, false lien.

Manchanda deposited the same amount, $148,342, back into the law firm's Citibank savings

account.

85.    On February 9, 2021, Manchanda withdrew $148,344 from the law firm's Citibank

savings account by writing a check to himself.  Manchanda deposited that check on April 4, 2022,[2]

into his law firm's savings account at M&T Bank. This is because after pressure from the IRS, CitiBank closed ur
account with zero notice and we were forced to find a new law firm
86.    On November 23, 2021, the second installment of the SBA Loan, totaling $350,000 bank account.

was deposited into Manchanda's law firm's checking account at TD Bank. This is because after pressure from the

87.    The next day, on November 24, 2021, Manchanda withdrew the entire $350,000 in IRS, CitiBank closed ur account with
zero notice and we were forced to find a
a check made payable to Manchanda Law Office PLLC. new law firm bank account.

This is a false statement since the capital was liquid and we were advised to protect the money from theft by NYC HRA
and their false lien.

_____

[1] The PPP loan was previously forgiven by the SBA and is accordingly not listed on the SBA's
proof of claim filed in Manchanda's bankruptcy.
[2] Although the check is dated February 9, 2021, Manchanda apparently waited over a year to
deposit it into the M&T savings account. This is a false statement since the capital was liquid and we were advised to
protect the money from theft by NYC HRA and their false lien.

88.     Upon information and belief, Manchanda used this TD Bank account for his law

firm's business operating expenses, as well as for his personal expenses.  Not for personal expenses.

89.     On April 4, 2022, the same day that he deposited the $148,344 check from the law

firm's Citibank savings account into the M&T business savings account, Manchanda also

deposited the $350,000 check from the firm's TD Bank checking account into the M&T business

savings account. We had always earmarked cash because we did not want to use the loan, so even if it was our money

90.     Thus, Manchanda deposited the entire amount of the SBA Loan, approximately
as we grossed sometimes $150,000 per month, we wanted optimally to return it - but when the
economy fell out after Biden taking office and COVID we found that we needed the money and used it.

$500,000, into his law firm's M&T savings account on or around April 4, 2022.

91.     On April 11, 2022, a week later, Manchanda withdrew $88,500 from the M&T

account, and used these funds for part of the downpayment for his personal residence at 270 not personal
residence,
Victory Boulevard. These were our own liquid funds, not SBA funds.                                   home law

92.     On July 6, 2022, the day Manchanda closed the sale for 270 Victory Boulevard, office.

Manchanda withdrew $180,157.27 from the M&T savings account, using these funds to pay the

balance he owed for the home purchase and for closing costs. These were our own liquid funds, not SBA funds.
Even if it was, it was for our home law office, a
93.     Also in July 2022, Manchanda wired $10,000 from the law firm's M&T savings
business expense.

account to Tri State Brickface Stucco, a contractor that did work on the outside of his home at 270

Victory Boulevard.  We discussed that we needed security due to death threats as I work in criminal defense,

immigration deportation defense, high conflict divorce and family law for 22 years.
94.     Manchanda also transferred approximately $70,000 from the firm's M&T savings

account to his M&T business checking account in July and August 2022. These were our own liquid funds, not
SBA funds.
95.     In August 2022, Manchanda withdrew $149,938.85 from the firm's M&T savings

account, leaving a balance of only $10 in that account.  It is unclear what Manchanda used these

funds for or into which account they were deposited. This is because after pressure from the IRS, Banks closed our
account with zero notice and we were forced to find a new law
firm bank account. Or we were trying to avoid the theft of NYC
HRA and their fake lien that we sued them for in NYS Supreme
Court.

16

96.     Manchanda's use of the proceeds of the loan taken out by his law firm to purchase his home and pay home-related expenses violates the terms of the loan agreement, which require EIDL loan proceeds to be used for "working capital necessary to carry the business concern until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury" caused by COVID-19. 13 C.F.R. § 123.303.

*These were our own liquid funds, not SBA funds.*

97.     In addition, even though Manchanda claims that he uses his home for almost all of his legal work, he did not receive the required permission from the SBA to relocate his business. His use of his home as his office therefore further violates the SBA loan agreement.

*We did not relocate our business as we maintained (and still do) the 30 Wall Street, New York NY 10005 flagship office.*

98.     Manchanda thus improperly used the SBA Loan proceeds to pay for his personal residence and home improvement expenses just months before filing for bankruptcy in which he sought a discharge of that loan.

*These were our own liquid funds, not SBA funds.*

99.     Manchanda also failed to keep books and records documenting how he used the loan proceeds, as was required by the SBA loan agreement.  Manchanda testified at his deposition that he intermingled the SBA funds into accounts that he also used for personal expenses.

*This is a false, defamatory, slanderous, libelous and tortious statement - that's why AUSA Dana Walsh Kumar keeps using the weasel phrase "upon information and belief."*

## COUNT I
### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)

100.    The allegations contained in paragraphs 1 through 99 are incorporated by reference as if fully set forth herein.

101.    This Court may deny discharge if "the debtor, within intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).

102.    "Intent to hinder is shown where a debtor acts with an intent to impede or obstruct creditors, while the intent to delay is shown when the debtor acts with an intent to slow or postpone

creditors." *In re Gasson*, 629 B.R. 539, 550 (S.D.N.Y. 2021), *aff'd sub nom. Gasson v. Premier Cap., LLC*, 43 F.4th 37 (2d Cir. 2022).

103.    Manchanda purchased expensive and unnecessary items in the year before filing False for bankruptcy, including expensive gifts for his wife, an expensive home, and a luxury car, and used the proceeds from an SBA loan to his law firm to purchase his personal residence and to make improvements on it, in order to hinder, delay or defraud the IRS's and the SBA's ability to collect from him.

104.    By immediately withdrawing the SBA funds from the accounts to which they were deposited, Manchanda never intended to use those funds for their required purpose.    Instead, False Manchanda used the SBA funds for the downpayment on his house and thousands of dollars worth of home improvements.    He thus never intended on repaying the SBA loan and instead sought to discharge it in bankruptcy.

105.    Moreover, Manchanda attempted to conceal the purchase of his home by failing to disclose on his petition that he had moved within the past three years.    In multiple places on his False petition and schedules, Manchanda stated that he had not moved in the year preceding the bankruptcy. These etchings were either by CPA Michael Arons or Bankruptcy Lawyer Bruce Bronson - see our complaints against them.
106.    All of this was done with an intent to hinder and defraud creditors, and denial of discharge under 11 U.S.C. § 727(a)(2) is warranted.    False

**COUNT II**
**Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)**

107.    The allegations contained in paragraphs 1 through 106 are incorporated by reference as if fully set forth herein.

108.    This Court may deny discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents,

records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3).

109. Manchanda failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

*False - all of these books, documents, records, papers are with Bruce Bronson and/ or Michael Arons, whom we have told (ordered) to provide to AUSA Dana Walsh Kumar et al.*

110. To satisfy his recordkeeping obligations, a debtor's records "must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *In re Shove*, 83 F.4th 102, 111 (1st Cir. 2023). *But the problem is, AUSA Dana Walsh Kumar and her team are not "intelligent."*

111. Manchanda's records do not identify transactions such that an intelligent inquiry can be made of them and he failed to produce records providing a complete and accurate portrayal of his financial condition or that would allow a creditor to track his financial dealings. Instead, the records Manchand provided to the IRS and SBA show business accounts that include expenses for both personal and business that do not provide an accurate picture of Manchanda's financial condition since there is no way to discern exactly which expenses were business-related or how Manchanda treated those expenses. *That's your problem, not ours.*

112. For example, Manchanda pays for clothing, medical expenses, jewelry, take-out meals and other seemingly personal items through his business accounts and, upon information and belief, he does not have any personal checking or savings accounts.

*We do a Schedule C, just like Jeff Bezos and Elon Musk.*

113. In addition, Manchanda failed to maintain books and records showing his use of the SBA loan proceeds. In fact, Manchanda admits to having "intermingled" the SBA loan proceeds with other money "on a regular basis." It is therefore impossible to ascertain definitively how this money was used and for which purposes. *This is a false statement for the reasons provided above.*

19

114.    Nor is Manchanda's failure to maintain records justified.  As a lawyer and business *[handwritten: Arons and Bronson have everything.]* owner for over twenty years, it was not reasonable for Manchanda to fail to keep records recording business expenses or recording how the SBA loan proceeds were utilized.

115.    Denial of discharge pursuant to 11 U.S.C. § 727(a)(3) is therefore warranted.

## COUNT III
### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

116.    The allegations contained in paragraphs 1 through 115 are incorporated by reference as if fully set forth herein.

117.    This Court may deny a debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account."  11 U.S.C. § 727(a)(4).

118.    In this bankruptcy, Manchanda certified, under penalty of perjury, that his petition, the accompanying schedules, and the Statement of Financial Affairs were each true and correct to the best of his knowledge, information, and belief.

*[handwritten left margin: Not true!]*

119.    Nevertheless, Manchanda made numerous false statements in these documents, including misstatements about the valuation of his law firm and the timing of his home purchase, and omitted relevant information about his business.

*[handwritten right margin: Bruce Bronson filled in and filed said bankruptcy petition, we subpoenaed him and our case file and valuation data sine June 2023 but to date, he has not cooperated, complied, appeared or responded.]*

120.    Manchanda made these statements knowingly and has failed to correct any false statements since filing his petition.

121.    These statements relate directly to Manchanda's business dealings and the disposition of his property with respect to the purchase of his home, and are therefore material.

122.    Denial of discharge pursuant to 11 U.S.C. § 727(a)(4) is therefore warranted.

## COUNT IV
### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5)

123.    The allegations contained in paragraphs 1 through 122 are incorporated by reference as if fully set forth herein.

124.    This Court may deny a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

125.    "This section is intended to deter those who attempt to abuse the bankruptcy process by obfuscating the true nature of [their] affairs, and then refusing to provide a credible explanation." *In re Gannon*, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) (internal quotation marks omitted) (alteration in original).

126.    Manchanda has claimed that he has insufficient assets to meet his liabilities, but has failed to explain how he managed to live a lavish lifestyle, including luxury watches, cars and a new home, in the year preceding his bankruptcy. *[handwritten: These were our own liquid funds, not SBA funds. Even so SBA funds are allowed for bona fide business expenses, including home law office expenses.]*

127.    Manchanda claims to have earned "lots of money" just several months before filing for bankruptcy but has not explained satisfactorily a loss of assets or deficiency of assets to meet his liabilities considering his lifestyle and purchases. *[handwritten: We did explain - Biden sucks as a President and ruined this country's economy.]*

128.    In addition, as explained above, Manchanda withdrew $149,938.85 from the firm's M&T savings account in August 2022 and Manchanda has not provided documentation reflecting how those funds were used. *[handwritten: They were transferred to our new bank account, you liar.]*

129.    Accordingly, denial of discharge pursuant to 11 U.S.C. § 727(a)(6) is warranted.

## COUNT V
### Nondischargeability of Tax Debt for Tax Year 2022
### Pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i)

130.    The allegations contained in paragraphs 1 through 129 are incorporated by reference as if fully set forth herein.

131.   Pursuant to 11 U.S.C. § 523(a)(1)(A), a tax debt is not dischargeable if it is "of the kind and for periods specified in section . . . 507(a)(8) of this title." Section 507(a)(8)(A)(i), in turn, applies to "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition."

132.   Manchanda filed his bankruptcy petition on February 4, 2023. Because his income tax return for tax year 2022 was not due until April 15, 2023—within three years of the date of his petition—his tax, interest, and penalty liabilities are exempted from discharge pursuant to section 523(a)(1)(A).

133.   Any corresponding penalties are further exempted from discharge pursuant to 11 U.S.C. § 523(a)(7), which provides that a debtor is not discharged from a debt "relating to a tax of a kind not specified in" 11 U.S.C. § 523(a)(1).

## COUNT VI
### Nondischargeability of Tax Debt for Tax Years 2009-2013 and 2015
### Pursuant to 11 U.S.C. § 523(a)(1)(C)

134.   The allegations contained in paragraphs 1 through 133 are incorporated by reference as if fully set forth herein.

135.   Pursuant to 11 U.S.C. § 523(a)(1)(C), a tax debt is not dischargeable when the debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

136.   The tax, interest, and penalty liabilities Manchanda incurred for tax years 2009-2013 and 2015 are excepted from discharge under section 523(a)(1)(C) because Manchanda willfully attempted to evade or defeat these taxes in one or more of several ways, including:

(a) Failing to make voluntary payments towards his outstanding tax obligations;

*No - we had pending OICs, or federal lawsuits during those periods, plus IRS can not collect taxes past 10 years pursuant to Collection Statute Expiration Date (CSED). The abuse of authority in trying to enforce tax debts that date from 15 years ago after Debtor's multiple OIC requests since 2008 is illegal, unethical and immoral as per the 10 year Collection Statute Expiration Date (CSED).*

22

(b) Claiming improper deductions on his tax returns by labeling personal expenses as False

business expenses;

(c) Spending significant sums of money on non-essential items such as luxury cars and False

watches;

(d) Using business accounts to pay for personal expenses like luxury cars and watches for False

himself and his wife; Law Office Manager!!!

(e) Concealing the value of his personal property and business interests in his bankruptcy

schedules by underestimating or failing to estimate their value.                    False

## COUNT VII
### Nondischargeability of the SBA Loan Pursuant to 11 U.S.C. §§ 523(a)(2)

137.    The allegations contained in paragraphs 1 through 136 are incorporated by

reference as if fully set forth herein.

138.    Pursuant to 11 U.S.C. § 523(a)(2), a debt for money is not dischargeable to the

extent it is obtained by "false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition."

139.    When a creditor "entrusts the debtor with money to use for a specific purpose and

the debtor has no intention of using it in that manner, a misrepresentation exists upon which a debt

can be held non-dischargeable." *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995).

140.    The SBA Loan funds were required to be used as working capital to alleviate

economic injury relating to his business, Manchanda Law Office.  Manchanda received the loan

knowing those terms.

141.    Immediately after the loan proceeds were deposited into the law firm's business No we had t

checking accounts, Manchanda withdrew them, indicating that he never intended to use them for protect them as per our

the intended purpose.  Instead, he transferred the funds to other accounts and ultimately spent most lawyers advice

due to the false lien by NYC HRA, and repeated bank closures brought on  y pressure from AUSA Dana Walsh Kumar's

client, the IRS poking around and harassing bank staff (per our federal lawsuit).

of them on the downpayment for his personal residence and other home expenses, in violation of False!
the terms of the loan documents.

142.   In addition, Manchanda failed to maintain proper books and records showing how False!
the proceeds were spent, and instead deliberately intermingled those funds within his accounts, in
further violation of the loan agreement.

WHEREFORE, the United States respectfully requests that this Court enter the following
relief:

A. Deny Defendant a discharge; or

B. Determine that Defendant's federal income tax liabilities for tax years 2009-2013, 2015,
   and 2022, including interest and penalties, are nondischargeable;

C. Determine that the SBA Loan is nondischargeable; and

D. Award the United States its costs in this action, and such other and further relief as the
   Court determines is just and proper.

Dated: March 25, 2024
       New York, New York

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York

                    By:    /s/ Dana Walsh Kumar
                           DANA WALSH KUMAR
                           Assistant United States Attorney
                           86 Chambers Street, 3rd Floor
                           New York, New York 10007
                           Tel.: (212) 637-2741
                           E-mail: dana.walsh.kumar@usdoj.gov

# CERTIFICATE OF SERVICE

On March 29, 2024, I, Rahul Manchanda, served a copy of this Debtor Reply Affirmation to AUSA Dana Walsh Kumar and any attached pages to AUSA Dana Walsh Kumar, located at 86 Chambers Street, 3rd Floor, New York, New York 10007 via ECF, Electronic, and U.S. Mail.


By: Rahul Manchanda, Esq.
Manchanda Law Office PLLC
30 Wall Street, 8th Floor
New York, New York 10005
Tel: (212) 968-8600
Fax: (212) 968-8601